FERGUSON, next friend, vs. THE COLUMBUS AND ROME RAILWAY.

1. Where a child of ten years of age was seriously injured at a turn-table belonging to a railroad, and a witness who reached the spot a few minutes after the injury occurred, and who testified to circumstances tending to show that the turn-table was the instrument by which the child was hurt, such as the appearance of fresh, warm blood, and pieces of flesh, torn from her limbs, being on the machine and in the pit under it and on the ends of the rails, it was error to refuse to allow such witness to testify what the child said when he reached the place, as to how she was hurt. Such statements were part of the res gestæ. Nor did it matter as to their admission whether the child lived or died.

2. Negligence is a question peculiarly cognizable by the jury, and where there is evidence tending to show this, and which is not ebutted by the same evidence, a non-suit should not be awarded. In the present case, there was proof going to show that the plaintiff was injured by the defendant's turn-table, and that it was negligently kept; that it was in an exposed public place, much frequented, and that it was not secured by fastenings on the morning of the injury; nor will it authorize a non-suit because the father of the child was a night watchman at the depot, was kept awake all night and had promised to give such supervision and take such care of the defendant's property at this yard as he could without entirely depriving himself of sleep during the day; that he had gone home for his breakfast, and in his absence had left his son to watch and act for him; and that the child was sent to carry breakfast to her brother.

November 17, 1885.

Evidence. *Res Gestæ.* Railroads. Negligence. Non-suit. Before Judge WILLIS. Muscogee Superior Court. May Term, 1885.

Sarah Ferguson, as next friend of Isabel Ferguson, brought suit against the Columbus and Rome Railway for damages for a personal injury. The testimony on behalf of the plaintiff showed, in brief, as follows: The defendant's turn-table, which was located in its yard, in Columbus, was not locked or fastened. The yard belonged to the company and was used for railroad purposes. It was

fenced in, but the gates were down, and people could pass through it. Quite a number of people lived in the vicinity. Isabel was a child of ten years of age. Her father was night watchman at the defendant's yard. A short time before the injury, the railroad authorities requested him to notice about the yard in the day time, as they had moved the depot from this yard. He was not expected to keep awake both day and night, but was allowed to go to town in the day or go about. Sometimes he slept in the yard and sometimes in the porch of the next house. He was told to notice in the day-time that no one stold cross-ties or things of that sort. On the morning of the injury, he left his son, thirteen years of age, at the yard, to keep children from throwing rocks and breaking out the window-lights. The child's mother sent Isabel with the boy's breakfast, and the father knew she had gone. A witness testified that he saw some little boys at the turn-table, one of whom was pushing it around, and he made them get away. He was about a hundred yards from the place of the injury. He saw several people gathered around the place, and went there. He found the little girl lying on a plank near the turn-table, which was bloody. There were two or three pieces of flesh as large as two fingers and a good deal of fresh blood on it, and more blood and flesh scattered in the bottom of the pit where the table revolved. "It seems that the table turned a little piece after the child ran over it; it got to turning and kept rolling, and blood was scattered along a good deal." [It was offered to show by this witness what the child said when he arrived at the scene of the injury, but this was rejected.] The child's legs were terribly bruised and lacerated, the flesh being stripped off to the bone in places. When the turn-table revolves, so that the tracks come together, the iron is very close together, and this witness noticed that the ends of the table were smeared with blood. He stated that the child could not have fallen off and hurt herself as she was hurt, unless the table was in motion; that he did

not know whether she was on the turn-table or not; and that there was no one about the table when he got there, but after he got there, a little boy shoved it, and he drove him away. The child's mother and the doctors who attended her also testified as to the extent and nature of the injury. It was also shown that the turn-table was very easily turned; that a child could turn it and ride on it; and that when it was turned half way round, a person could walk round in the pit, but when turned in the direction of the track, the space was hardly as wide as a man's hand. There were no fastenings on the turn-table.

To account for the child's absence from court, her mother testified that she was in Alabama about five miles from a town; that she was unable to walk to the railroad, and the mother did not have the means of hiring a conveyance.

On motion, the court granted a non-suit, and the plaintiff excepted, and assigned error thereon and on the rejection of the child's sayings.

Louis F. Garrard, for plaintiff in error.

Peabody, Brannon & Battle, for defendant.

Hall, Justice.

The plaintiff, an infant of ten years of age, instituted her suit against the defendant to recover damages for an injury she suffered by reason of its negligence in leaving the turn-table, belonging to its road, exposed in a public and frequented place in the city of Columbus, without enclosing it by a sufficient fence or securing it by locks or other fastenings. During the progress of the trial, she proposed to ask a witness who had reached the spot a few minutes after the injury occurred, and who had testified to circumstances tending to show that the turn-table was the instrument by which she was hurt, such as the appearance of fresh, warm blood, and pieces of flesh, torn from her limbs, being on the machine and in the pit under it

and on the ends of the rails—" What did the plaintiff say at the time you got there as to how she was hurt?" This question was objected to by the defendant and ruled out by the court. This is the first error alleged. At the close of the plaintiff's testimony, the defendant moved a non-suit, which was granted, and to this judgment exception was also taken and error alleged thereon.

1. Was the testimony sought by the question ruled out a part of the *res gestæ?* The declaration of the party, if it did not accompany the act, was so near thereto in time as to be free from all suspicion of device or after-thought, and as to form a part of the transaction, and was. therefore admissible in evidence. Code, §3773 and citations. In the *Augusta Factory vs. Barnes*, 72 *Ga.*, 217, we recently examined th s question with care, and came to the conclusion that declarations made a half hour after-wards by a child similarly injured, and who died from the effects of the injury, were so near in point of time there-to as to exclude all suspicion of device or after-thought, and were admissible as part of the *res gestæ.* We are well satisfied with the conclusion reached in that case, and can-not conceive that the death of the party makes a difference in the application of the rule. The testimony is original, and the declaration is not a mere declaration, but being contemporaneous, or nearly so, with the act, becomes a part thereof, and is a distinct, though not altogether an independent fact. The ruling out of this question was error; it ex-cluded from the consideration of the jury testimony which, we are to infer, would have thrown light upon the trans-action they were investigating, and which might have prevented the non-suit afterwards avoided.

2. Although the judgment should be reversed for this error, yet we do not place our opinion upon that alone. Negligence is a question peculiarly cognizable by the jury, and where there is evidence tending to show this, and which is not rebutted by the same evidence, a non-suit should not be awarded. There was proof in this case going to show

that the plaintiff was injured by the defendant's turn-table, and that it was negligently kept; that it was in an exposed public place, much frequented; that it was not secured by fastenings; when the witness, Tice, got there on the fatal Sunday morning, he saw two or three little boys at the turn table, and one of them was pushing it around. He made them "get away." The fact that the little girl was sent to the defendant's yard by her mother, to carry breakfast to an older brother, who was left there to protect the property of the company from depredation and injury, does not necessarily show that she was voluntarily placed in a situation of peril; nor could such a conclusion be drawn from the knowledge of her father that she had been sent there on the errand above mentioned. He was the night-watchman at the depot, was kept awake all night long, and had promised to give such supervision to, and take such care of, the defendant's property at this yard as he could without entirely depriving himself of sleep during the day; he had gone home for his breakfast, and in his absence had left his son to watch and act for him. The cases which forbid the awarding of a non-suit, under the circumstances in proof here, are quite numerous. *Mercier vs. Mercier*, 43 *Ga.*, 324; *Phillips vs. Brigham, Kelly & Co.*, 26 *Id.*, 617; *Chisholm vs. Atlanta Gas Light Co.*, 57 *Id.*, 28; *Biggers vs. Pace*, 5 *Id.*, 172; *Hankerson vs. S. W. R. R. Co.*, 59 *Id*, 593; *Jones vs. Tift*, 63 *Ga.*, 488; *Cook vs. W. & A. R. R. Co.*, 69 *Id.*, 619; *Neff & Co. vs. Broom*, 70 *Id.*, 256. It would be going a great way to presume that either the mother or father supposed that this little girl would visit, much less ride on, this turn-table. She was sent with her brother's breakfast, who does not appear to have had any care of the turn-table, but whose business it was to watch on Sunday morning and to prevent mischievous persons from breaking the glass in the windows of the company's building and thieves from stealing and carrying away its crossties.

Judgment reversed.