THE CITY OF PEKIN

*v.*

PATRICK MCMAHON, Admr.

*Filed at Springfield January 14, 1895.*

1. NEGLIGENCE—*attractions on premises dangerous to children.* Unguarded premises supplied with dangerous attractions are regarded as holding out an implied invitation to children, which will make the owner of the premises liable for injuries to them, even though they be technical trespassers.

2. SAME—*whether the result was probable is a question for the jury.* Whether or not the dangerous premises were so attractive to children as to suggest the probability of the accident, and thus render the owner liable, is a question for the jury.

3. SAME—*degree of care required of a child.* A child eight years old is bound to use only such care as children of his age, capacity and intelligence are capable of exercising, and whether such care has been used is properly submitted to the jury.

4. SAME—*city liable for maintaining pit filled with water.* A deep pit in a populous city, wherein are water and floating timbers on which children are in the habit of playing, near a driveway across lots only partially inclosed, will render the city which owns the premises liable for the drowning of a child playing there, if found by the jury so attractive as to entice children into danger and to suggest the probability of the accident.*

5. MUNICIPAL CORPORATION—*bound by the same rule as individuals.* A municipal corporation owning, leasing or controlling vacant lots is chargeable with the same duties and obligations which devolve upon individuals in respect to their condition.

*For a collection of the authorities on liability for dangerous condition of private grounds, see note to *Lepnick* v. *Gaddis*, 26 L. R. A. 686.

3 LRA 575
LRA 114

| 154 | 141 |
| 168 | 46 |
| 168 | 48 |
| 154 | 141 |
| 71a | 348 |
| 154 | 141 |
| 73a | 188 |
| 154 | 141 |
| 79a | 35 |
| 154 | 141 |
| 87a | 127 |
| d88a | 244 |
| 88a | 651 |
| 154 | 141 |
| f92a | 1170 |
| f92a | 2170 |
| 92a | 1171 |
| 154 | 141 |
| d190 | 4164 |
| 94a | 5147 |
| f95a | 3319 |
| 154 | 141 |
| d98a | 1291 |
| j98a | 1292 |
| 154 | 141 |
| 100a | 1453 |
| 154 | 141 |
| 201 | 1319 |
| 154 | 141 |
| e104a | 3609 |
| e104a | 1673 |
| 154 | 141 |
| 107a | 1605 |
| 109a | 1388 |
| 109a | 2389 |
| 154 | 141 |
| 110a | 3249 |
| 154 | 141 |
| 211 | 538 |
| 112a | 1144 |

6. ESTOPPEL—*city estopped to discredit its own ordinance.* A city is estopped from denying its duty as to a dangerous pit, where such city has passed an ordinance declaring pits of that character to be a nuisance; and such an ordinance is properly admissible in evidence in a suit against the city for injury.

7. EXECUTION—*cannot issue against city—amendment of record.* It is error to award an execution against a city in an action for damages, but such error may be cured by direction from the court of review to the clerk below to amend the record in that respect.

*City of Pekin* v. *McMahon*, 53 Ill. App. 189, affirmed.

APPEAL from the Appellate Court for the Third District;—heard in that court on appeal from the Circuit Court of Tazewell county; the Hon. NATHANIEL W. GREEN, Judge, presiding.

This is an action on the case brought by appellee, as administrator of the estate of his deceased son, Frank McMahon, against appellant, the City of Pekin, to recover damages for the death of plaintiff's intestate alleged to have been caused by the negligence of said City. Verdict and judgment in the Circuit Court were in favor of the plaintiff. The Appellate Court has affirmed the judgment, and the present appeal is from such judgment of affirmance.

The declaration alleges, that, on April 12, 1892, the City owned lots 7, 8, 9 and 10 in Block 11 in Bailey's Addition to Pekin; that, for a long time before that date, it had caused a dangerous hole or pit to be made in said lots by digging therein and removing sand and gravel therefrom; that it permitted water to accumulate and remain in said hole or pit, so that it became a nuisance and dangerous to the lives of citizens and "of children of tender years incapable of exercising ordinary care or discretion who might be attracted thereto;" that it was defendant's duty to cause the same to be drained, so as to remove the water therefrom; that the deceased, a child of tender years and incapable of exercising ordinary care or discretion, was attracted thereto, and necessarily and

unavoidably, on account of defendant's failure to drain the water from said pit, without fault on his part or on the part of his parents, fell into the said pit, and was drowned.

The plea was the general issue, with notice of special matter of defense to the effect, that the premises were the property of the city; that it was incorporated under the general Act of incorporation; that the lots were enclosed by a fence on the east and west sides thereof and nearly enclosed on the south and north sides thereof; that the deceased entered and remained upon the premises as a mere trespasser, and engaged in play without the knowledge, permission or invitation of defendant, and carelessly, accidentally or negligently fell into a pool of water thereon, and was drowned.

The proof tends to show, that the City became the owner of the lots in 1887; that they constituted about half a block in size; that they were bounded on the north by a public alley 10 feet wide, on the west by Capitol Street, on the South by St. Julien Street; that these streets were each 60 feet wide and improved and open to public travel; that there had originally been a natural water course running across the lots from northeast to southwest, sufficient to carry off the surface water accumulating to the north, east and southeast over an area of 200 or 300 acres; that this water had passed through said water course across said lots to the Illinois River; that the lots were in the thickly settled limits of the city; that, before its taking possession of the lots in 1887, the city had built a sewer, with an aperture of four feet, at the southwest corner thereof under the junction of Capitol and St. Julien Streets; that thereafter it dug into the water course to get gravel to improve its streets; that the excavation thus made was some 200 feet long and 100 feet wide; that its banks were steep; that the depth was about 10 feet below the mouth of the sewer, so that the water could

not run off; that the deepest water was over 14 feet; that the city stopped taking out gravel in 1890 or 1891; that the fence along the west side on Capitol Street was bad and caved in somewhat; that there was a gap or opening in the fence more than 40 feet wide on the south side on St. Julien Street, and another gap in the fence 30 or 40 feet wide upon the alley near the northeast corner; that, with a view of filling up the pit, a causeway or driveway had been thrown up across from the north gap south-westerly to the south gap by the dumping in of rubbish and cinders; that parties had been in the habit of passing along this causeway for a year before April 12, 1892, when deceased was drowned, using it to go across the lots instead of going around the corner; that this driveway was open so that the public could use it; that the boys had been in the habit of playing upon planks and logs in the water in the pit, and had fallen into the water; that the city authorities had been notified by parents of the danger and requested to remove it; that the danger-ous condition continued a year before the accident; that, after building the roadway, there were two bodies of water; that the deceased was 8 years and 2 months old; that his father was a laboring man and had gone to his work at 6 o'clock A. M. on April 12, 1892, and did not return until quarter past 6 P. M.; that the mother had been doing washing on that day; that she had four chil-dren besides the deceased, the youngest being 8 months old; that she had heard of the pit, but had never visited it; that deceased came home from school at 4 P. M. and was given permission by his mother to play; that he and a boy, named Harry Evans, met one Soady driving a wagon, who allowed them to get in and ride; that Soady drove to his barn on the north side of said alley opposite the opening or gap in the north fence; that there the boys dismounted from the wagon; that deceased went through the opening on to the causeway, and stepped upon a log in the water, which rolled and threw him into

the pond, and he was drowned at a point a few feet south from Soady's barn near the northeast corner of the lots.

G. W. Cunningham, W. L. Prettyman, and William Don Maus, for appellant :

The occupant of land is under no obligation to strangers to place guards around excavations made by him. Shearman and Redfield on Negligence, (3d ed.) p. 598, sec. 505. And so with the owner of land. Ibid. p. 592, sec. 499.

A municipal corporation is not liable to a trespasser, who goes without license, permission or invitation upon its land, though unmolested, for mere pleasure or to gratify curiosity, and there meets with an injury, even though through the corporation's negligent management of its property. 1 Thompson on Negligence, 303.

No distinction is made in favor of an infant child so receiving an injury. In such a case the corporation owes no special duty to a child straying from its parents, and the duty of protecting it is not shifted from the parents to the corporation because it chances to escape their care. Beach on Public Corp. sec. 754; *Clark* v. *Manchester*, 62 N. H. 577; *Gillespie* v. *McGowan*, 100 Pa. St. 144.

The case of *Hargreaves* v. *Deacon*, 25 Mich. 1, contains a full and able discussion of the principles applicable to the case at bar, and in which it is held, substantially, that owners of private property are not liable for injuries occasioned by leaving a dangerous place thereon unguarded, where the person injured (an infant) was not on the premises by permission, or on business, or on other lawful occasion, and had no right to be there.

The principle laid down in 1 Thompson on Negligence, 303, was applied in *Railroad Co.* v. *Carraher*, 47 Ill. 333 ; *Murray* v. *McLean*, 57 id. 380 ; *Railroad Co.* v. *Godfrey*, 71 id. 500 ; *Gavin* v. *Chicago*, 97 id. 66 ; *Railroad Co.* v. *Bodemer*, 139 id. 596 ; *Gibson* v. *Leonard*, 143 id. 182 ; *Frost* v. *Railroad Co.* 64 N. H. 220 ; *Clark* v. *Manchester*, 62 id. 577.

T. N. GREEN, and W. R. CURRAN, for appellee :

Appellee concedes the general rule to be, that the private owner or occupant of land is under no legal obligation to a stranger capable of exercising ordinary care, and guilty of technical trespass in coming upon his close, to place guards around excavations or pits on his premises, or even to drain or fill them up, to prevent such trespasser from harm or injury by falling therein, but contends that while this is a general rule of law it has many exceptions, which are equally well-founded and supported by reason. If the land of a private owner is situated in the midst of a populous city, or in a public place adjacent to public streets or roads and alleys, and he keeps or maintains thereon dangerous machinery, gates or turn-tables, dangerous pits or ponds of water, which he has made and excavated for his own use, adjacent to such public streets and alleys, and which he has notice are attractive to children of tender years, incapable of exercising ordinary care or discretion, and which do attract children of that character, then the law is, that such private owner must use reasonable care and diligence to protect such children from harm in coming on his premises without fault on the part of their parents, and the fact that such children are technically guilty of trespass in coming on his premises will not defeat an action for damages sustained by them in meddling with his machinery, gates or turn-table, or falling into the water in such excavations and being drowned. *Railroad Co.* v. *Stout,* 17 Wall. 657; *Railroad Co.* v. *Dunden,* 37 Kan. 1; *Evenisch* v. *Railroad Co.* 57 Tex. 123 ; *Railroad Co.* v. *Fitzsimmons,* 22 Kan. 686 ; *Ferguson* v. *Railway Co.* 75 Ga. 673, and 77 id. 102 ; *Railroad Co.* v. *Bell,* 81 Ill. 76 ; *Birge* v. *Gardner,* 19 Conn. 509 ; *Keffe* v. *Railroad Co.* 22 Minn. 207; *Daily* v. *Railroad Co.* 26 Conn. 590 ; *O'Marra* v. *Railroad Co.* 38 N. Y. 445 ; *Townsend* v. *Wathen,* 9 East, 277; *Schwartz* v. *Gilmore,* 45 Ill. 455 ; *Railway Co.* v. *McWherter,* 3 Am. Ry. Corp. 158 ; *Loomis* v. *Terry,* 17 Wend. 497; *Smith* v. *O'Conor,*

48 Pa. St. 218; *Hydraulic Works Co.* v. *Orr,* 83 id. 332; *Powers* v. *Harlow,* 53 Mich. 515; *Bransom* v. *Labrot,* 81 Ky. 643; *Whirley* v. *Whiteman,* 38 Tenn. 610; 1 Shearman & Redfield on Negligence, secs. 73, 97, 98; 1 Thompson on Negligence, 304, 305; Wharton on Negligence, secs. 250, 265.

In general, a municipal corporation has no more right than a natural person to create and maintain a nuisance, and is liable for injuries occasioned thereby in any case where a private person would be liable under like circumstances. *Thayer* v. *Boston,* 19 Pick. 516; *Bailey* v. *City of New York,* 3 Hill, 531; *Allen* v. *Decatur,* 23 Ill. 332; *Chicago* v. *Joney,* 60 id. 383; *Chicago* v. *Dermody,* 61 id. 431; *Chicago* v. *McGraw,* 75 id. 566; *Joliet* v. *Shufeldt,* 144 id. 403.

MAGRUDER, J.: *First,* the main question in the case arises out of the refusal of the trial Court to give the second and third instructions asked by the 'defendant. Is an individual land owner obliged to respond in damages for the death of a child occurring upon his premises under such circumstances, as are developed by the testimony in this case?

The general rule is well settled, that the private owner or occupant of land is under no obligations to strangers to place guards around excavations upon his land. The law does not require him to keep his premises in safe condition for the benefit of trespassers, or those who come upon them without invitation either express or implied, and merely to seek their own pleasure or gratify their own curiosity. (1 Thompson on Neg. page 303; 2 Shear. & Red. on Neg.—4 ed.—sec. 715). An exception, however, to this general rule exists in favor of children. Although a child of tender years, who meets with an injury upon the premises of a private owner, may be a technical trespasser, yet the owner may be liable, if the things causing the injury have been left exposed and unguarded, and are of such a character as to be an attraction to the child, appealing to his childish curiosity and

instincts. Unguarded premises, which are thus supplied with dangerous attractions, are regarded as holding out implied invitations to such children. "The owner of land, where children are allowed or accustomed to play, particularly if it is unfenced, must use ordinary care to keep it in safe condition; for they being without judgment and likely to be drawn by childish curiosity into places of danger, are not to be classed with trespassers, idlers and mere licensees." (2 Shear. & Red. on Neg.—4 ed.—sec. 705; 4 Am. & Eng. Enc. of Law, page 53, and cases in note). In such case, the owner should reasonably anticipate the injury which has happened. (1 Thompson on Neg. page 304).

There is conflict in the decisions upon this subject, some courts holding in favor of the liability of the private owner, and others ruling against it. Where the land of a private owner is in a thickly settled city, adjacent to a public street or alley, and he has upon it, or suffers to be upon it, dangerous machinery or a dangerous pit or pond of water, or any other dangerous agency, at a point thereon near such public street or alley, of such a character as to be attractive to children of tender years incapable of exercising ordinary care, and he is aware or has notice of its attractions for children of that class, we think that he is under obligations to use reasonable care to protect them from injury when coming upon said premises, even though they may be technical trespassers. To charge him with such an obligation under such circumstances is merely to apply the well known maxim, *sic utere tuo ut alienum non lœdas.* It is true, as a general rule, that a party guilty of negligence is not liable if he does not owe the duty which he has neglected to the person claiming damages. (*Williams* v. *C. & A. R. R. Co.* 135 Ill. 491). But, though the private owner may owe no duty to an adult under the facts stated, the cases, known as the "turn-table" cases, hold that such duty is due from him to a child of tender years.

The leading one of the turn-table cases is *R. R. Co.* v. *Stout*, 17 Wall. 657; there the company was held liable in an action by a child about six years old, who had injured his foot while playing with a turn-table belonging to the company, although it was contended, that he was a trespasser, and had received the injury because of his own negligence, and that the company owed him no duty; it appearing that the turn-table was located upon the private grounds of the company in a settlement of from 100 to 150 persons, about 80 rods from the depot, near two travelled roads, and was a dangerous machine, and was not guarded or fastened, and that a servant of the company had previously seen boys playing there and had forbidden them to do so ; and it was further held, that the care and caution required of a child is according to his maturity and capacity and is to be determined by the circumstances of each case ; that the fact of the child being a technical trespasser made no difference in his right of recovery; that the question of the defendant's negligence was one for the jury to determine ; and that the jury were justified in believing, that children would probably resort to the turn-table, and that the defendant should have anticipated their resort to it, from the fact that several boys were at play there when the accident occurred, and had played there on other occasions within the observation and to the knowledge of defendant's employees.

To the same effect are the following cases : *Keffe* v. *Mil. & St. Paul Ry. Co.* 21 Minn. 207; *K. C. Ry. Co.* v. *Fitzsimmons*, 22 Kan. 686; id. 31 Am. Rep. 203; *Koons* v. *St. L. & I. M. R. R.* 65 Mo. 592; *U. P. Ry. Co.* v. *Dunden*, 37 Kan. 1; *Evanisch* v. *G. C. & S. F. Ry. Co.* 57 Tex. 123 ; *Ferguson* v. *C. & R. Ry.* 75 Ga. 637; id. 77 Ga. 102; *St. L., V. & T. H. R. R. Co.* v. *Bell*, 81 Ill. 76.

In many if not all of the foregoing "turn-table" cases, stress is laid upon the facts, that the turn-table was in a public or open and frequented place ; that it was dan-

gerous, and left unfastened, and, when in motion, was attractive to children by reason of their love of motion "by other means than their own locomotion;" and that the servants of the railroad companies knew, or had reason to believe, that it was attractive to children, and that children were in the habit of playing on or about it. The doctrine of the cases is, that the child cannot be regarded as a voluntary trespasser, because he is induced to come upon the turn-table by the defendant's own conduct. "What an express invitation would be to an adult, the temptation of an attractive plaything is to a child of tender years." (*Keffe* v. *Mil. & St. Paul Ry. Co. supra; U. S. Y. & T. Co.* v. *Rourke*, 10 Bradw: 474).

We are unable to see any substantial difference between the turn-table cases, and the case at bar. Here was a half block of ground in a populous city, bounded on two sides by public streets and on the third side by a public alley; with an opening of some 40 feet in the fence upon the street on the south side, and an opening of equal dimensions in the fence upon the alley on the north side; with a causeway running from one opening to the other diagonally across the premises, inviting approach and actually used for passage by men and teams. Upon this half block was a dangerous pond or pit, in which the water was always 5 or 6 feet deep, and sometimes 14 feet deep. Logs and timbers floated about in this pond; and boys had for some time been in the habit of playing upon them in the water. The city authorities had been notified of its attractiveness to children, and of its dangerous character. They not only suffered the pond to remain undrained, but the fences around it to be broken down in some places and to be actually removed in others. The deceased boy, Frank McMahon, is proven to have entered the premises at the opening in the fence on the alley. This opening was only 17 feet from the barn of Soady, where he dismounted from the wagon on which he had been riding. The place where he was seen playing in

the water was only a few feet from this opening on the public alley. The love of motion, which attracts a child to play upon a revolving turn-table, will also attract him to experiment with a floating plank or log which he finds in a pond within his easy reach.

The doctrine of the "turn-table" cases is sustained by other cases where the injuries complained of were caused by agencies of a different character. Such are *Mackey* v. *City of Vicksburg*, 64 Miss. 777; *Birge* v. *Gardner*, 19 Conn. 507; *Daley* v. *N. & W. R. R. Co.* 26 id. 591; *Bransom* v. *Labrot*, 81 Ken. 638; *Powers* v. *Harlow*, 53 Mich. 507; *Hydraulic Works Co.* v. *Orr*, 83 Pa. St. 332; *Whirley* v. *Whiteman*, 1 Head, (Tenn.) 610.

There are very respectable authorities on the other side of the question here under consideration. Such are *Gillespie* v. *McGowan*, 100 Pa. St. 144; *Hargreaves* v. *Deacon*, 25 Mich. 1; *Klix* v. *Nieman*, 68 Wis. 271; *Schmidt* v. *Kan. City Dis. Co.* 90 Mo. 284; *Indianapolis* v. *Emmelman*, 108 Ind. 530; *Clark* v. *Richmond*, 83 Va. 355; *Clark* v. *Manchester*, 62 N. H. 577; *Frost* v. *Railroad*, 64 id. 220. Some of these cases are distinguishable from the case at bar. In the *Pennsylvania* case, a child, 7 years and 10 months old, fell into a well in the field of a private owner, 100 feet from the public highway and 300 feet from the nearest house, and not concealed in any way so as to escape notice; the scene of the accident was at a comparatively remote point, and the court below had held that the plaintiff could not be guilty of contributory negligence as matter of law, instead of submitting the question to the jury; moreover, the case is inconsistent with the ruling of the same Court in the previous case of *Hydraulic Works Co.* v. *Orr, supra*.

In the *Michigan* case a child of tender years fell into a cistern on property "not immediately adjoining a highway;" and it is expressly said: "We express no opinion concerning cases where the nature of the business is such as to present peculiar attraction to children," etc. So,

in the *Missouri* case, it was expressly stated that the agency causing the accident was not shown by the evidence to be "attractive to children." The Supreme Court of *New Hampshire* expressly repudiates the doctrine of the "turn-table" cases. Such also seems to be the position of the Court in the *Wisconsin* case. In the *Indiana* case the excavation, into which the child fell, was in a shallow stream which was part of a public street, and it was held that the city was liable for that reason ; and, consequently, what was said as to excavations upon private property was not necessary to the decision of the case ; it was said, however, that "whoever does anything * * * immediately adjacent to a public street to attract children of the vicinity into danger, which they cannot appreciate, owes the duty of protecting them by suitably guarding the source of danger." In the *Virginia* case where the action was against the city of Richmond, the city was held not to be liable because the child climbed up from the sidewalk upon a brick wall and fell into the area beyond it, thereby receiving the injuries complained of. But, whether the cases, which hold to the rule of non-liability under such facts as appear in this record, can be clearly distinguished from the case at bar or not, we are not disposed to follow them in view of the authorities on the other side.

We do not regard the case of *St. L., V. & T. H. R. R. Co.* v. *Bell*, 81 Ill. 76, as opposing but rather as endorsing the doctrine of the "turn-table" cases; that case was decided when this Court so far considered questions of fact as to determine whether the verdict of a jury was contrary to the weight of the evidence or not ; and we held that, "in view of the isolated position in which the turn-table was located, the proofs fail to show that appellant was guilty of such want of care as could lawfully charge it with damages for this accident."

The question, whether a defendant has or has not been guilty of negligence in case of such an accident upon

his land to a child of tender years, is for the jury. In-volved in this question is the further question whether or not the premises were sufficiently attractive to entice children into danger, and to suggest to the defendant the probability of the occurrence of such accident; and, therefore, such further question is also a matter to be determined by the jury. (*Mackey* v. *City of Vicksburg, supra; Railroad Co.* v. *Stout, supra*). The subject of the attractive-ness of the premises was submitted to the jury by the instructions given for the plaintiff in the case at bar.

It was also submitted to the jury by such instructions to determine, whether the deceased or his parents were guilty of contributory negligence. In answer to special interrogatories submitted by the City, the jury found specially, that 'the deceased, Frank McMahon, at the time of his death, was not of sufficient age and ability to exercise ordinary care and discretion in taking care of himself, and was without fault on his part, and did not, at that time, have discretion, intelligence, information and knowledge sufficient to enable him to know, that it was dangerous for him to play in the water on the prem-ises and to be at the place of drowning; that he neces-sarily and unavoidably fell into the pit and was drowned; that the premises were not sufficiently fenced to warn him of his danger in entering thereon; and that his par-ents, at the time of his drowning, were without fault in respect to the same.

In *Chicago City Ry. Co.* v. *Wilcox*, 138 Ill. 370, we held that, where a suit for damages, caused by the negligence of the defendant, is brought by a child of tender years, the negligence of his parents cannot be imputed to him in support of the defense of contributory negligence. Here, however, the suit is brought by the father as adminis-trator of a deceased child. In such a case, the contribu-tory negligence of the parent, if it exist, may be shown in bar of the action. (*Chi. City Ry. Co.* v. *Wilcox, supra*). The question whether the parents were guilty of such contrib-

utory negligence, having been fairly left to the jury, has been decided adversely to the appellant, and cannot be reviewed here.

Whether, as matter of law, a child seven years old or under that age, can be justly held to be incapable of negligence, it is not necessary to decide. But where a child has passed the age of seven years, as was the case with appellee's deceased intestate, we are of the opinion, that he is bound to use such care as children of his age, capacity and intelligence are capable of exercising, and that the question whether he has done so or not should be submitted to the jury. (*Kerr* v. *Forgue*, 54 Ill. 482 ; *Chi. City Ry. Co.* v. *Wilcox, supra;* 2 Thompson on Neg. pages 1181, 1182; *R. R. Co.* v. *Stout, supra; Birge* v. *Gardner, supra; Daley* v. *N. & W. R. R. Co. supra; U. S. Y. & T. Co.* v. *Rourke, supra; Evanisch* v. *G. C. & S. F. Ry. Co. supra; K. C. Ry. Co.* v. *Fitzsimmons, supra*). It was so submitted here, and the instructions given for the plaintiff are in accordance with these views.

*Second,* a municipal corporation holding property as a private owner is chargeable with the same duties and obligations, which devolve on individuals. Where it owns, leases or controls lands, houses, docks, piers, water and gas works, it is liable, in respect to the care of the same, for injuries arising from neglect, in the same manner as an individual owner is liable, and must respond in the same way for creating or suffering nuisances. (Cooley on Torts, marg. pages 619, 620; 15 Am. & Eng. Enc. of Law, page 1155, and cases cited ; *Mackey* v. *City of Vicksburg, supra; Clark* v. *Manchester, supra*).

*Third,* the plaintiff introduced in evidence, on the trial below, section 8 of the city ordinances of the city of Pekin which is as follows :

"8. Any owner or occupant or person in possession of any unenclosed lot or parcel of land in said city, who shall, by digging or removing earth, sand or gravel from any such lot or parcel of land, make or cause to be made

in such unenclosed lot or parcel of land any pit or hole of such depth and character as to be considered dangerous, unsightly or a source of annoyance to the persons residing in the vicinity thereof or adjacent thereto, shall be deemed guilty of creating a nuisance; and any owner, occupant or possessor of any such unenclosed lot or parcel of land who shall refuse or neglect to remedy or abate said nuisance, by filling up or covering or securely fencing the same, after being notified so to do by the superintendent of police, or by any member of the police force, or any person aggrieved thereby, shall be subject to a penalty of not less than five dollars nor more than fifty dollars, and a further penalty of two dollars for every day, after the first conviction, that said nuisance shall by him be continued."

It is claimed, that the court erred in admitting this ordinance in evidence. The declaration alleged that defendant had negligently permitted large quantities of water to accumulate in the pit upon the lots in question, "so that the same became a nuisance and dangerous to the lives * * * of children of tender years," etc. The plea of the general issue had the effect of putting it at issue whether the excavation was a nuisance or not; and the ordinance was to some extent evidence of the affirmative of such issue. Moreover, in its notice of special matters of defense, the defendant had stated that the premises "were *nearly* enclosed upon the north and south sides thereof." Under the ordinance it was an owner's duty, after notice, to "*securely*," and not partially or ineffectually, fence the same. We are not satisfied that the admission of the ordinance injured the defendant. In connection with the other proof as to the character and condition of the excavation upon the lots, it had a tendency to show what the character and condition of the excavation ought to have been under the requirements exacted by the city itself of private owners of

land. The City was thereby estopped from denying its duty under the circumstances.

*Fourth,* the judgment of the Circuit Court was unquestionably erroneous in ordering execution to issue against the city. The Appellate Court has found that this order was a mistake of the Circuit clerk, and has entered an order making the necessary correction and directing the Circuit Court to amend its record accordingly. The final judgment of the Appellate Court affirms the judgment of the Circuit Court as thus modified. We do not think that there was any error in such action of the Appellate Court.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*