# John Linnberg, Administrator, v. City of Rock Island.

## Gen. No. 4,864.

1. EXCAVATIONS—*obligation of owner of land to guard.* As a general rule, the owner or occupant of land is under no obligation to strangers to place guards around excavations on his land, nor to keep his premises in a safe condition for the benefit of those who come upon his premises for their own pleasure, without invitation. There is an exception to this rule in favor of a child of tender years if the things causing the injury have been left exposed and unguarded and are of such a character as to be attractive to a child and to appeal to his childish curiosity and instincts.

2. ATTRACTIVE NUISANCE—*how question of what constitutes, determined.* The question as to what constitutes an attractive nuisance is ordinarily to be determined by the jury, but it may become a question of law if it can be said that the child in question has reached such an age where he may be presumed to have such intelligence, capacity and experience as to exclude him from the benefit of the rule.

3. VARIANCE—*when objection for, comes too late.* An objection of variance comes too late when first raised on appeal.

Action in case for death caused by alleged wrongful act. Appeal from the Circuit Court of Rock Island County; the Hon. WILLIAM H. GEST, Judge, presiding. Heard in this court at the April term, 1907. Reversed and remanded. Opinion filed October 10, 1907.

**Statement by the Court.** John Linnberg, as administrator of the estate of Edgar Linnberg, deceased, brought this action against the city of Rock Island to recover damages to the next of kin of said Edgar resulting from his death by drowning. The declaration charged that the city had possession and control of a certain public street called 38th street and negligently allowed the same to be and remain in bad and unsafe repair and condition so that on and along said street there was a large pond of water in which were planks, boards and parts of sidewalks, so exposed as to be attractive and inviting to children and tempting to them to ride thereon and dangerous for any one who might ride thereon, which dangerous character of said pond and planks, boards and sidewalks therein the city knew, and said Edgar, by reason of his age, did not know; that the city negligently allowed the same to remain in a dangerous condition with no protection between said pool and the driveway on said street; that Edgar was a child of ten years whose attention was attracted by the inviting place to ride and play, and he climbed upon one of the floating planks or boards in said pond and, while in the exercise of such care as one of his age could and should exercise, he fell in the water and was drowned, leaving certain next of kin who suffered pecuniary damage by his death, by reason whereof an action accrued to plaintiff as administrator. Defendant pleaded not guilty. There was a jury trial. At the close of plaintiff's proofs the court, on motion of defendant, excluded the evidence and instructed the jury to find the defendant not guilty. A verdict of not guilty was returned, a motion by plaintiff for a new trial was denied, and defendant had judgment. Plaintiff has sued out this writ of error to review this judgment.

Thirty-eighth street runs north and south in the outskirts of the city of Rock Island. It crosses a deep ravine between two steep bluffs. A block or two north of the ravine is Augustana College and its various buildings. Some distance south of the ravine there is a settled part of the city, with residences and some stores. For some distance east and west of this street the other north and south streets do

Linnberg v. City of Rock Island.

not cross the ravine, so that persons living south of the ravine in that part of the city and desiring to go to Augustana College or to any other place directly north must cross the ravine on 38th street, but the main business part of town was westerly or northwesterly and was usually reached by people living south of the ravine by a street car running in another direction. Thirty-eighth street was a necessary thoroughfare but was not greatly traveled. Some twenty years ago the city made 38th street passable across the ravine by cutting through the upper edges of the bluffs on each side and putting the material taken therefrom into the bottom of the ravine on the street. An embankment was thus made across the ravine probably fourteen feet high and which at the bottom was the width of the street and sloped to the top. Originally a passageway for water was left under this embankment. In time this became stopped up and a deep pond was thereby formed on the upper side of the street. When this pond was full, twelve or fourteen feet in width of the pond was inside the street limits. There was no fence or guard between the traveled way and the pond nor any sidewalk on that side of the street. A sidewalk was built on the down hill side upon posts or stilts. Sometimes the water in the pond rose above the top of the bank and flowed across it and seriously injured the roadway by cutting a channel therein. To obviate that the city laid a pipe across the bank about two feet below its surface and ran the upper end of it several feet down towards the bottom of the pond, and also turned the lower end towards the bottom of the ravine below. When the water in the pond rose so high as to endanger the bank the fire department came and attached a pump to the lower end of the pipe and started the water to running through, and then the water was siphoned out till the water in the pond was lowered to the end of the pipe resting therein. Sometime before the accident in question, but whether a few months or two years is uncertain from the evidence, there was a fire in the woods at that point. The sidewalk either caught fire or was liable to burn, and the fire department came and tore out the sidewalk. There-

32

after pieces of the sidewalk were in the pond, but whether placed there by the fire department or by some one else does not appear. The particular piece of sidewalk here in question was three or four feet wide and eight to twelve feet long, consisting of boards or pieces of plank nailed to stringers. Thereafter this piece of sidewalk floated about the pond in accordance with the direction of the wind. If the wind was from the east this sidewalk was up against the bank in the street. If the wind was from the west it went up to the other end of the pond. The pond extended east 75 to 100 feet and then turned south and extended several hundred feet south, all between high steep banks, and was of a depth varying from six to fourteen feet.

John Linnberg lived several blocks south and one block east of this embankment. He had a wife and several children. On July 4, 1902, when his son Edgar was just past ten years of age, a family named Hill came to spend the day with them. After dinner the heads of the two families went to some place of public resort, leaving the children at home. Afterwards Harry Hill, 13 years old, Emil Linnberg, 12 years old, and Edgar, 10 years old, started out together to go to Augustana College. They went to 38th street and went north upon it till they came to this pond. This sidewalk was up against the bank and within the limits of the street. Emil and Edgar got upon the raft and got some kind of a stick or board by which they could propel themselves, and floated around upon the pond some time. Finally it was proposed to go in swimming and accordingly to get out of sight of the highway, they pushed the raft east and then south beyond the bend in the pond. There Emil and Edgar undressed, one of them leaving his clothes upon the raft and the other upon the east side of the pond. Harry followed them around the edge of the pond but did not undress or go upon the raft. In one place Harry testified that both boys went in swimming, but from his entire evidence his meaning seems to be that both undressed and that Edgar sat on the raft with his feet in the water while Emil swam two or three times across the pond, which was about 40 feet wide

there. Suddenly Emil sank, presumably from exhaustion. He rose and sank again. When he rose the second time he called for help, and went down again and was drowned. Edgar, in response to his brother's call, jumped from the raft, was unable to swim, and was drowned. Harry ran for help, and soon after the neighbors collected and the bodies were found and recovered.

WILLIAM A. MEESE, GUSTAVUS A. SHALLBERG and CYRUS E. DIETZ, for plaintiff in error.

OLIVER OLSON, City Attorney, J. F. & S. R. KENWORTHY, for defendant in error.

MR. JUSTICE DIBELL delivered the opinion of the court.

It is a general rule that the owner or occupant of land is under no obligation to strangers to place guards around excavations on his land nor to keep his premises in a safe condition for the benefit of those who come upon his premises for their own pleasure without invitation. There is an exception to this rule in favor of a child of tender years, if the things causing the injury have been left exposed and unguarded and are of such a character as to be attractive to the child and to appeal to his childish curiosity and instincts. Such unguarded premises having upon them dangerous attractions are regarded as holding out implied invitations to such children, and the owner of the premises must use ordinary care to keep them in safe condition, for such children being without judgment are likely to be drawn by childish curiosity into places of danger, and the owner may be liable for an injury to them even though they are technical trespassers. City of Pekin v. McMahon, 154 Ill., 141; Siddall v. Jansen, 168 Ill., 43; True & True Co. v. Woda, 201 Ill., 315; and L. E. & W. R. R. Co. v. Klinkraft, 227 Ill., 439, are cases where such a liability has been recognized. In Heimann v. Kinnare, 190 Ill., 156; Seymour v. Union Stock Yards Co., 224 Ill., 579, and Hanna v. Iowa Cent. Ry. Co., 129 Ill. App., 134, the application of this principle was denied under the facts in those particular cases.

Whether this sidewalk, floating upon this pond within the limits of the street, was calculated to be attractive to a child of tender years, and was liable to lead such child into a place of danger, was a question of fact for the jury. Whether deceased was of such an age and had such a lack of intelligence, capacity and experience as to bring him within the protection of the rule above stated, was also a question of fact, unless it can be said that when any child has reached the age of ten years he is presumed as a matter of law to have such intelligence, capacity and experience as to exclude him from the protection of the rule. We think that cannot be decided by the court as a matter of law, especially in view of L. E. & W. R. R. Co. v. Klinkraft, *supra,* where a girl twelve years and eight months old was not treated as of such an age as to prevent her having the benefit of this principle. We must presume that under the facts set forth in the foregoing statement the jury might have found that Edgar was a child of tender years, within the meaning of the doctrine above stated, and that this floating sidewalk within the limits of the street was calculated to be attractive to such a child and liable to lead it into a place of danger. If, then, the raft had tipped over, or had proved insufficient to sustain the weight of the two boys, and the deceased had on that account fallen from the raft and been drowned, a case would have been made which would require submission to the jury; nor do we concede that the case would have been any different if the accident had not happened till the raft was outside the limits of the street. If by this attraction such a child was enticed into a place of danger in the street, upon a pond created by the city and upon a sidewalk owned by the city, a liability would continue for the result during all the time it was in that place of danger, or till some other cause intervened.

The serious question in the case is whether the fact that the raft did not sink or tip over, and that Edgar was not drowned because the raft was insufficient, or because of any lack of ability to maintain himself upon it, but because when his brother was sinking and calling for help, he in his

excitement jumped from the raft to rescue him, authorized the court to hold as a matter of law that a new cause had intervened and that therefore plaintiff could not recover. Our conclusion is that the existence of this sudden emergency was one of the events which was liable to happen and to produce disaster to a child of tender years, and that the court could not say as a matter of law that the facts above stated did not tend to make a case for plaintiff.

The declaration alleged that Edgar fell from the raft. The proof was that he jumped from it. It is argued that this was such a variance as required the court to direct a verdict. In order to avail of a variance upon appeal the objection must have been made in the trial court, and the variance must have been particularly pointed out so as to enable the trial judge to pass upon it understandingly, and so as to enable the plaintiff to obviate the objection by amendment. Lehigh Valley Transportation Co. v. Post Sugar Co., 228 Ill., 121. The bill of exceptions in this case does not show that any question of variance was raised in the court below, and therefore it is not available here. It is urged that we should sustain the ruling of the court below because the declaration is defective. It is meagre and yet somewhat involved, but appellee did not demur thereto but joined issue, and we are of opinion that if appellant had recovered a verdict the declaration would have been sufficient to support it.

For the error in excluding the evidence and directing a verdict for appellee the judgment is reversed and the cause remanded.

*Reversed and remanded.*