## August Mindeman, administrator of the Estate of Roy Mindeman, Deceased, Appellant, v. Sanitary District of Chicago, Appellee.

### Gen. No. 27,592.

NEGLIGENCE—*liability for leaving attractive dangerous premises unguarded as to children as jury question.* It was error to direct a verdict for defendant and the question of its liability for damages for the death of a child less than six years old should have been submitted to the jury where the evidence shows that defendant left an unfinished canal filled with water, with high spoil banks on each side and an easy grade down from a neighboring street which was broken down to the end of the canal and the edge of· the water, making access easily available to children of tender years who lived within a few blocks of the place and were accustomed to resort thereto to play, that the water was full of floating lumber and other objects, that the place was attractive to children and that defendant knew they were accustomed to play about the canal and spoil banks, which were unguarded and unprotected by any barrier.

THOMSON, P. J., dissenting.

Appeal by plaintiff from the Superior Court of Cook county; the Hon. JACOB H. HOPKINS, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1923. Reversed and remanded. Opinion filed May 9, 1923. Rehearing denied May 23, 1923.

JOHN G. RIORDAN, for appellant.

WILLIAM F. MULVIHILL and CLYDE L. DAY, for appellee; MORTON S. CRESSY, PRESTON CLARK, WARWICK A. SHAW, FRANCIS L. BRINKMAN, WILLIS V. JEFFERSON and FARLIN H. BALL, of counsel.

MR. JUSTICE TAYLOR delivered the opinion of the court.

This is a suit brought by August Mindeman, as administrator, against the Sanitary District of Chicago to recover damages for the death of his son, Roy Mindeman. In the trial court, at the close of all the

evidence, there was a directed verdict and a judgment in favor of the defendant. This appeal is therefrom.

The declaration alleges that the defendant prior to April 20, 1920, had constructed a portion of a certain canal, or artificial watercourse, 30 feet deep and 60 feet in width, which in its unfinished condition ended abruptly at or near the western limits of the City of Blue Island in Cook county adjacent to public streets or highways and in close proximity to the thickly settled district of the City of Blue Island; that at the time in question the easterly end of said canal—which contained water to the depth of 20 feet, and upon which water there were floating certain planks, bottles and other objects—was attractive to children of tender years and appealed to their childish curiosity; that the easterly end of the canal was permitted by the defendant to remain open, exposed and unguarded so that children of a tender age were likely to be attracted thereto and fall therein; that Roy Mindeman, the son of August Mindeman, lived in the City of Blue Island and was drawn and attracted to the exposed and unguarded section of the canal and as a direct result thereof, and in consequence of the defendant's negligence, failure to inclose, fence or guard the easterly end of the canal, while playing there necessarily and unavoidably fell into the water in the canal and as a consequence was drowned. The defendant pleaded the general issue.

The evidence shows the following: The Sanitary District in order to take care of the sewage of Chicago south of 87th street, and to provide a navigable waterway from the Calumet river to the main channel in the Sag, had excavated and constructed a channel about a year prior to April 20, 1920, up to the western limits of the City of Blue Island, about in a line with California or Ogden avenue. It was being constructed from the west eastward. The terminus at that time was the end of what was called section 12, section 13

not having been started. The channel ran east and
west and there was on both sides of it a high spoil
bank. On each side of the channel there was a per-
pendicular concrete gravity wall, 4 feet thick on top,
and extending down about 23 or 24 feet to a base 10
or 11 feet wide. It was flat on top. The right of way
of the Sanitary District extended 350 feet south of
the channel and was used chiefly for farming. The
Blue Island railroad station was a little to the north-
east, at the junction of Broadway and Vine streets.
Certain photographs were offered in evidence and one
of them shows seven or more houses quite close to-
gether facing north on John street and but a short
distance from the end of the channel. It also shows
what might be called the rough condition of the then
terminus of the excavation and one of the spoil banks.
Although not thickly built up, the territory in the
neighborhood contains quite a number of houses. The
deceased, Roy Mindeman, lived with his father at
Broadway and Vine streets, which was about 1,250
feet from the end of the excavated channel.

On April 20, 1920, the deceased was five years and
ten months old. He had been in good health, not
crippled or deformed in any way, had good eyesight
and hearing and knew the alphabet and could write.
He lunched with his father and mother and three
brothers that day at home, and about 1:15 p. m. went
over to the house of his playmate, one Irving Rothen-
berger, who was about eleven years of age. The de-
ceased, Roy Mindeman, got some bottles in an alley
and then went over to the canal banks. They put the
bottles on the wall of the canal, on the south side, and
then went up on the spoil bank and threw stones at
them. After that they threw the bottles in the canal
and began throwing stones at them. Rothenberger,
having gone from the retaining wall up the sloping
embankment to get more stones to throw, says that
when he turned around and was walking down towards
the wall he saw Roy's head disappear over the wall

into the canal; that when he ran down to the wall and looked over he saw him struggling in the water. He then called out and ran home and informed his mother. Immediately thereafter efforts were made to find the body but it was not discovered until the succeeding day. When discovered it was in the water opposite the end of the retaining wall.

The deceased left him surviving his father, forty-one years of age, his mother, thirty-six years of age, three brothers, Arthur, Lester and Robert, fifteen, eleven and nine years of age, respectively.

As to the east end of the channel, the evidence shows that there was no fence or barrier guarding it and that part of a road which runs past the east end was broken down and damaged and allowed access to the east end of the canal. The father of the deceased testified that when he arrived at the canal to search for his son he saw a lot of logs, barrels, tin cans and bottles, and his son's cap, floating on the water; that the cap was about 25 feet from the extreme east end of the canal. One Vanderwall testified that at the east end the ground sloped down to the water in the canal and that there were ties and rubbish and other objects floating on the water near the extreme east end. One Trinkhaus, an engineer who was an inspector for the defendant and patrolled the canal, testified that at times he saw children playing near the east end of section 12; that if they were small he ordered them away. Also, Rothenberger, the playmate of the deceased, testified that he played around the easterly end of the canal two or three times a week and that he saw other children also playing around there.

As the trial judge, at the close of all the evidence, instructed the jury to find the defendant not guilty and as there is no special controversy as to the physical condition of the *locus in quo,* the question arises whether or not the evidence, involving as it did the attractiveness and danger of the unguarded premises, the knowledge of the defendant that children played

there, the failure of the defendant to guard or protect the premises in any way, should have been submitted to the jury as evidence of negligence.

The principle involved grows out of the ancient maxim, *sic utere tuo ut alienum non laedas.*

The leading case in this State on the general matters herein involved is that of *City of Pekin v. McMahon,* 154 Ill. 141. In that case, where a boy a little over eight years of age stepped upon a log floating in a pond 5 or 6 feet deep and in some places 14 feet deep —which was formed by a deep depression running through a block of ground, in a populous city, bounded on two sides by public streets and on the third side by a public alley, and with broken down fences on three sides, and with a causeway running from one opening to another diagonally across the premises inviting approach, and actually used for passage by men and teams—and was drowned, the court said, in a learned opinion by the late Mr. Justice Magruder:

"Where the land of a private owner is in a thickly settled city, adjacent to a public street or alley, and he has upon it, or suffers to be upon it, dangerous machinery or a dangerous pit or pond of water, or any other dangerous agency, at a point thereon near such public street or alley, of such character as to be attractive to children of tender years incapable of exercising ordinary care, and he is aware or has notice of its attractions for children of that class, we think that he is under obligations to use reasonable care to protect them from injury when coming upon said premises, even though they may be technical trespassers. To charge him with such an obligation under such circumstances is merely to apply the well-known maxim, *sic utere tuo ut alienum non laedas.* It is true, as a general rule, that a party guilty of negligence is not liable if he does not owe the duty which he has neglected to the person claiming damages (*Williams v. Chicago & A. R. Co.,* 135 Ill. 491). But, though the private owner may owe no duty to an adult under the facts stated, the cases, known as the 'turntable' cases,

hold that such duty is due from him to a child of tender years.''

The court also further said in that case:

''The question, whether a defendant has or has not been guilty of negligence in case of such an accident upon his land to a child of tender years, is for the jury. Involved in this question is the further question whether or not the premises were sufficiently attractive to entice children into danger, and to suggest to the defendant the probability of the occurrence of such accident; and, therefore, such further question is also a matter to be determined by the jury.''

The principles involved in that case were applied in *Thomas v. Anthony*, 261 Ill. 288. In the latter case, a boy six and a half years of age was drowned in a clay pit located outside the corporate limits of the City of Kewanee. The clay pit was full of water, and was about 70 by 180 feet, and 25 feet deep. The boy that was drowned went, with his brother who was two years older, to the clay pit to fish, and while there he caught a chicken and threw it into the water and when attempting to get it out of the water fell in and was drowned. The evidence showed that the mother of the children had frequently forbidden their going to the clay pit and that they had been punished by her for going contrary to her wishes. In sustaining a judgment for the plaintiff, the court held that refusing to direct a verdict because the evidence failed to establish that the death of the child was the proximate result of the attractive nuisance was not error. In *Donk Bros. Coal & Coke Co. v. Leavitt*, 109 Ill. App. 385, which was a case involving the death of a three-year-old child by falling in a cistern, the court said:

''The evidence in this case, particularly since appellant offered no evidence to the contrary, justifies the conclusion that appellant knew children were in the habit of making the *locus in quo* a playground; that the natural instincts of the child caused it to lift the cover by means of the projecting handle, from its place in the platform, to discover what might be hidden

thereunder. It is common knowledge that in this way the curiosity of children becomes satisfied and they begin to learn of objects which surround them. In such state of the proof, the allegations of the declaration that the place 'was a dangerous structure to children of tender years who might be attracted thereto,' was fully proven, and the submission of that issue of fact to the jury by appellee's instructions was fully justified by the law as laid down in the cases heretofore cited from the Supreme Court of this State.''

The decision in that case is based upon the *City of Pekin v. McMahon, supra,* and states that the Supreme Court of this State has gone further with reference to placing duties upon owners and occupants of dangerous premises in regard to children of tender years than many courts in other jurisdictions; that that is admitted by both the court itself and by text-writers.

In *Linnberg v. City of Rock Island,* 136 Ill. App. 495, an administrator brought suit for the death of a ten-year-old boy. The evidence showed that 38th street in the outskirts of the City of Rock Island crossed a deep ravine between two steep bluffs; that an embankment had been made across the ravine which was about 14 feet high and that originally a passageway for water was left under the embankment; that in time that became stopped up and a deep pond was formed on the upper side of the street; that a sidewalk which at one time crossed it had been torn up and pieces of it were in the water; that on the day in question the boy, with his brother, who was twelve years old, and another boy, who was thirteen years of age, were crossing the embankment when they saw a portion of the floating sidewalk up against the bank; that a boy named Emil, and Edgar, his brother, got on the raft and floated around and then undressed with the intention of going swimming; that Edgar was sitting on the raft while Emil was swimming; that the pond was about 40 feet wide; that suddenly Emil sank and when he arose the second time and called for help, his

brother Edgar jumped in, but, being unable to swim, he was drowned, as was also his brother. The trial judge excluded the evidence and directed a verdict for the defendant. Upon appeal, that judgment was reversed and the cause remanded on the ground that it was a question for the jury. Subsequently, there was another trial in which the plaintiff recovered a verdict and judgment which was afterwards affirmed by the Appellate Court. *Linnberg v. City of Rock Island*, 157 Ill. App. 527. In *Cochran v. Kankakee Stone & Lime Co.*, 179 Ill. App. 437, where a boy nearly eleven years of age was drowned by falling into a pond formed in a stone quarry where he had gone to fish, the court said:

"It is clear that the evidence makes a case for the decision of the jury upon the questions of fact above stated. The age of the child was not greater than in some of the reported cases where liability has been held to exist. The fact that the mother chastised her boy for going to the pond the day before tends to show due care on her part. The fact that the boy went there the next day in spite of the punishment, and equipped with the childish material above mentioned, tends to show his childish character and the lack of mature judgment. The state of the evidence would not warrant our reversing the conclusion of the jury upon the facts."

The court also said:

"In any given case where an injury results to a child from unguarded conditions upon the premises of another, the questions whether the premises are dangerous, whether they are calculated to be attractive to a child of tender years and liable to lead such child into danger, and whether the child has such a lack of intelligent capacity and experience as to bring him within the protection of said rule, are questions of fact for the jury." *Stedwell v. City of Chicago*, 297 Ill. 486; id., 214 Ill. App. 642.

It will be seen, therefore, that the tendency of the law in the State of Illinois is towards placing a greater

obligation on property owners, a humane tendency which is rather to be commended than condemned. It is inclined to consider children of tender years as the wards of all adults, and to require, at least, from property owners, more and more care.

The law is otherwise in many jurisdictions. For example, in *Stendal v. Boyd,* 73 Minn. 53, 75 N. W. 735, where a child four years and ten months old, while playing, fell into a pond in a quarry, the court held that as such pond, quoting from *Peters v. Bowman,* 115 Cal. 345, "cannot be rendered inaccessible to boys by any ordinary means," there was no liability. The court further said:

"So far as we are advised, there is but one adjudged case in which the doctrine has been extended to a pond on private premises. The exception is the case of *City of Pekin v. McMahon,* 154 Ill. 141, 39 N. E. 484, which fully sustains the contention of the plaintiff in the case at bar. * * * With the exception of the case of *City of Pekin v. McMahon,* the courts of last resort, including those which recognize the doctrine of the turntable cases, have uniformly denied the liability of a landowner for injuries to trespassing children by reason of open and unguarded ponds and excavations upon his premises."

The *City of Pekin, Linnberg, Thomas, Donk Bros. Coal & Coke Co.* and *Cochran* cases, *supra,* taken together, all of which are Illinois cases, demonstrate that it is the law in this State that where the owner of property creates, as the result of some artificial construction, a body of water deep enough to cause drowning and which is easily accessible and is attractive to children of tender years who are too immature to be chargeable with being trespassers, and of which attractiveness he has knowledge and also has knowledge that children are in the habit of going there to play and leaves it unguarded, he does so at his peril; and if injury results from a failure reasonably to protect it, he may be chargeable with negligence. Here,

the crucial question, having in mind that we are only called upon to determine whether the evidence in the case should have been submitted to the jury, is whether the defendant was subject to some obligation to guard or protect the *locus in quo* in such a way as would constitute, under the circumstances, a reasonable effort to avoid injury to a child of tender years. In other words, is one, who is responsible for the creation of the terminus of an unfinished channel which is filled with water, with high spoil banks on each side and an easy grade down from a neighboring street, which street was broken down to the end of the channel and the water, making access easily available to children who lived within a few blocks of the place, and about which he knew children did play, subject to liability for damages for the death of a child less than six years of age who is attracted to the water for purposes of play and fell in and was drowned, if the property is left unguarded and unprotected.

Owing to the immaturity of the deceased it is unnecessary to discuss the question whether he was a trespasser or in any way guilty of contributory negligence. Where there is insufficient capacity to comprehend there is no will to avoid. On the other hand, if a minor has reached such maturity that he is able fully to comprehend the danger and use sufficient care to avoid it, he may be guilty of contributory negligence as a matter of law. *Heimann v. Kinnare,* 190 Ill. 156.

Considering the age of the deceased, the accessibility of the *locus in quo,* the conditions in the neighborhood as to the presence of houses and people, the attractiveness of the water and the spoil banks, the knowledge which the defendant had that children from time to time played about that end of the channel, the well-known habits and psychology of children, the fact that the terminus of the channel was entirely unprotected and unguarded, and bearing in mind the law as we have stated it above and as we conceive it to exist

in this State, we feel bound to conclude that there was sufficient evidence to justify its submission to the jury and that we are not justified in holding, as a matter of law, the evidence insufficient to show negligence.

The judgment will be reversed and the cause remanded for a new trial.

*Reversed and remanded.*

O'CONNOR, J., concurs.

MR. PRESIDING JUSTICE THOMSON dissenting: I am not able to concur in the foregoing decision. I appreciate the fact that our Supreme Court has gone farther, with reference to placing duties upon owners and occupants of property, including municipalities, in the matter of guarding against injury to children, when such property has been shown to include situations held to amount to an attractive nuisance, than the courts have gone in many other jurisdictions. But, in my opinion, the decisions in Illinois are not such as to warrant going to the extent of holding that a municipality, such as the Sanitary District, may be said to be maintaining an attractive nuisance in the form of what amounts to a public canal, when it has constructed that canal pursuant to the law and in the manner prescribed by that law. The evidence in the case at bar does not show that the child involved here got into the water, where he was drowned, at the temporary end of the channel, but he fell off of the stone wall forming the permanent channel embankment. There was no public thoroughfare contiguous to the channel or its temporary terminus. There was a roadway at the end of the channel which had been created by the driving of teams which had been used in the construction work, but in order to get to this end of the channel from the nearest public street one had to pass over the Sanitary District's right of way several hundred feet. In several of the cases cited in the majority opinion, the ponds or bodies of water involved were permitted to exist contiguous or very close to streets. In some of them it was shown that, for some

time prior to the occurrence there involved, objects of different kinds were floating in the water, in the *City of Pekin* case, logs, and in the *Linnberg* case, a section of sidewalk, which furnished attractions to boys in the immediate neighborhood. The case at bar involves what amounts to a public watercourse, constructed pursuant to law, by the defendant municipality and constructed as required, with perpendicular concrete sides, and a depth of water suitable for some degree of navigation. If the question of whether such a public watercourse, constructed on the municipality's right of way, is to be considered an attractive nuisance, is to be submitted to a jury, whenever children go over the defendant's right of way and fall from the concrete embankments into the channel, the only manner by which the defendant municipality may protect itself will be to fence this public watercourse for its entire length, or whenever it comes within what may be considered dangerous distances from habitations. In my opinion, the decisions in Illinois on attractive nuisances may not be carried to that extent. It cannot be held that every situation involving a condition which will be dangerous to children may, for that reason, be held to come within the purview of an attractive nuisance.