| 94 | 143 |
|----|-----|
| 115 | 187 |

</div>

### City of Chicago v. Patrick Hannon.

1. MUNICIPAL CORPORATIONS—*When Not Liable for Injuries on Private Roads.*—A city can not be held to have undertaken to make repairs upon and keep in good condition a driveway to a dumping ground over private lands, not in its possession or under its control, because one of its employes, without authority, directs a few teamsters to fill up holes upon such land over which they have chosen to drive for their own convenience.

**Trespass on the Case,** for personal injuries. Appeal from the Circuit Court of Cook County; the Hon. CHARLES A. BISHOP, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1900. Reversed and remanded. Opinion filed March 12, 1901.

**Statement.**—Appellee sued for personal injury, and recovered a verdict and judgment, from which this appeal is prosecuted.

Appellant was in possession of premises which it was using as a city garbage dump, by virtue of authority conferred in a written communication from the owner, dated October 31, 1895, addressed to the superintendent of street and alley cleaning, as follows:

"DEAR SIR: I herewith authorize you to use my property, known as Meyers' Clay Hole, on Thirty-third and Rockwell streets, from date until the 1st of June, 1897, as a city dump, and till then give you full possession for the benefit of the city. (Signed,) MICHAEL MEYERS."

It was during the time of the city's possession of this

clay hole as a dumping place that appellee received the injuries complained of. He was driving a team, attached to a wagon loaded with garbage, over a narrow driveway leading to the "dump," when the wheels ran into a deep rut or hole, cut by teams previously passing over it, the ground having been softened by recent rains. The wagon was upset and thrown down a steep incline at the side of the road, appellee falling underneath, and receiving apparently severe injuries.

There were two roads or driveways leading to the premises. One of these was along Thirty-fifth and Rockwell streets, public highways, from the latter of which a level roadway led to the dump. There is testimony tending to show that this was the regular entrance. The other road, upon which appellee was hurt, formed a "short cut," used by some teamsters because it saved a mile, it is said, to those coming from that direction. This "short cut," as it approached the dump, led over a steep railway embankment. It had been, prior to the use of the premises as a dumping place by the city, laid out by Meyers, the owner, to enable his own teams to drive out that way to Western avenue. After the city took possession of the clay hole this "short cut" driveway appears to have been used exclusively by garbage teams going and coming to and from the dump. The city kept an employe or foreman in charge of the dumping ground. He states that teamsters coming over this "short cut" were in the habit of complaining to him when there were holes in the driveway, and he would then, or whenever he observed the need, authorize or direct any teamster having a clean load of ashes to dump part of his load to fill up such places, to make "the road as good as I could for the parties coming over it in that direction."

ANDREW J. RYAN, GEORGE E. GORMAN and JAMES J. KELLY, attorneys for appellant.

DEVINE & O'CONNELL, attorneys for appellee; CHARLES L. MAHONY, of counsel.

Mr. Justice Freeman delivered the opinion of the court.

The ground upon which appellee's attorneys seek to sustain the verdict in his favor is thus stated in their brief:

"We maintain that the city of Chicago (appellant) is liable in this case in the same manner that any other corporation or any individual would be liable, who, having the possession of lands, built a roadway upon it and invited persons to use this roadway. * * * Appellant was not bound to build the road in question or to permit its use by appellee and others, but having voluntarily built it and held it out as a roadway by means of which access could be had to the dump, it was bound to build it in a proper manner, and having undertaken to make repairs upon it and keep it in good condition, it was guilty of a high degree of negligence in permitting it to be in the condition appellee found it the date of the accident."

The difficulty with this statement is that it is not borne out by the evidence. We find no evidence tending to show that appellant built the road. It was originally constructed by the owner of the brick yard and clay hole for his own convenience, a number of years before the city was allowed to deposit its garbage there, and apparently upon the property of the railway company or of private owners. Not only was it not constructed by the city, but so far as we can ascertain from the evidence the place where the accident occurred and the approach thereto were not upon any part of the premises over which the city had control. Meyers, the owner of the dumping place, testifies that the road in question "led along the canal bank. It came over from Western avenue across the tracks, and then down into the canal and then over into my ground." The accident happened on the incline descending from the railway tracks toward the premises used as a dump, and at a point variously estimated as from ten to forty feet from the top, where the driveway crossed the tracks. Whether it descended at right angles with or parallel with the railroad is not quite clear from the evidence. One of appellee's witnesses says "the incline is alongside the road," presumably referring to the railroad. But however this may be, there is nothing tending to show that the accident occurred on

any part of the premises over which the city had any right of control or possession.

But it is said that the city had undertaken to make repairs upon this road, and kept it in good condition. The only evidence that bears upon this contention is the testimony that the foreman at the dump authorized or directed teamsters to dump ashes to improve the road by filling up such holes as were worn therein from time to time. This was done, so far as appears, solely upon his own volition, and without authority of any kind from the city or its officials. The road in question was not a highway. It had never been used as such by the public at large. It was used as a driveway merely by the toleration of the owners of the land. The only reason, apparently, that the permission of the foreman to fill up the holes was even sought by the teamsters was, as one of them testifies, "of course if we didn't dump our loads where he told us we would not get our tickets punched." The only duty of this foreman was "to direct teams when they came into the dump, to take down the number of such teams and to make a report every day." We know of no warrant for holding that every city employe, no matter what his duties or the scope and nature of his employment, can impose liability upon the city in any such way. The foreman had no authority to direct or even authorize the teamsters to dump the contents of their wagons, or any part thereof, anywhere but in the dump. Surely the city can not be held to have undertaken to make repairs upon and keep in good condition a driveway over private lands not in its possession or control, because one of its employes, without authority, directs a few teamsters to fill up holes upon such land over which they have chosen to drive for their own convenience. We are not referred to any authorities sustaining appellee's contention, and it is safe to assume that none exist.

It is true, as stated by appellee's attorneys, that a municipal corporation holding property as a private owner, is chargeable with the same duties and obligations which devolve on individuals, and is liable in respect to the care of

the same for injuries arising from neglect in the same manner as an individual owner is liable. City of Pekin v. McMahon, 154 Ill. 141 (154). But the injury in this case was not inflicted when appellee was upon the premises in possession or control of appellant. There was another road which constituted the regular approach to the dump, and as there is testimony tending to show, on level ground, and in reasonably good condition.

It appears that the accident occurred in broad daylight, and that the hole which caused the wagon to be overturned was in plain sight. But in view of what has been said it is not necessary to consider whether or not the accident was caused by the contributory negligence of appellee.

There is an additional abstract filed by appellee, which we think was justified by the omissions in that prepared by appellant. The costs of such additional abstract will therefore be taxed against appellant.

The judgment of the Circuit Court must be reversed and the cause remanded.