## City of Chicago v. Patrick Hannon.

### Gen. No. 11,469.

1. HIGHWAY—*when municipality not liable for injuries resulting from defective.* Where a road is not a city street or highway and there rested upon the city no obligation to repair it, such city is not liable for injuries resulting from its defective condition, notwithstand-

ing a public official of such city may have exercised some authority with respect thereto, unless it appeared that such authority was exercised by authority of the city.

2. MUNICIPAL OFFICER—*power of*. A municipal officer can exercise only such power as is conferred upon him by law or by ordinance passed in pursuance of law, and his acts in the absence of power so conferred, do not bind the municipality. . .

Action on the case for personal injuries. Appeal from the Circuit Court of Cook County; the Hon. JOHN GIBBONS, Judge, presiding. Heard in this court at the October term, 1903. Reversed. Opinion filed July 14, 1904.

JOHN F. SMULSKI, City Attorney, for appellant; MORITZ ROSENTHAL, of counsel.

DEVINE & O'CONNELL, for appellee; CHARLES L. MAHONY, of counsel.

MR. PRESIDING JUSTICE ADAMS delivered the opinion of the court.

The amended declaration consists of two counts. It is averred in the first count, in substance, that May 19, 1896, the defendant was in possession of and using certain dumping grounds near 31st street and Western avenue, in the city of Chicago, and also in possession of, using and controlling a certain driveway for wagons and horses going to said dumping ground, beginning at Western avenue and 31st street, and running in a southwesterly direction up to and across certain railway tracks and down to the dumping ground; that plaintiff, at said date, was driving two horses and a wagon loaded with refuse across the railway tracks, and down to the dumping ground; that it was defendant's duty to keep said driveway in a reasonably safe condition, but it negligently permitted it to be and remain in a bad and unsafe condition, and full of holes, etc., and plaintiff, while exercising due care, and while driving said team to the dumping ground, by reason of the premises, drove into a hole and the wagon was upset and turned over, and was precipitated about thirty feet, by reason of which plaintiff was injured, etc. The second count does not differ materially from the first. Plaintiff filed an additional count, in

which is pleaded an ordinance of the city, which will be hereafter referred to. The defendant pleaded the general issue.

Appellant used the dumping ground by virtue of the following letter:

"CHICAGO, October 31st, 1895.

MR. JOHN C. W. RHODE,
        Superintendent of Street & Alley Cleaning, City.

DEAR SIR:—I herewith authorize you to use my property known as Myers' clay hole, on Thirty-third and Rockwell streets, from date until the 1st of June, 1897, as a city dump, and until then give you full possession for the benefit of the city.

Respectfully yours,
MICHAEL MYERS,
3508 Western avenue."

Myers' brickyard was at 33rd and Rockwell streets, on the west side of Rockwell street, and the place where he made brick was east of Rockwell street between 34th street and the Illinois and Michigan canal, and south of the canal, and was bounded on the east side by the railway tracks of the Pan Handle railroad. The dumping ground was a large and deep hole, made by excavating clay to make brick, and was situated several hundred feet west of the railway tracks above mentioned. Rockwell street and Western avenue are north and south streets, the former lying next west of the latter. 33rd and 34th streets are east and west streets. The roadway where the accident occurred ran west from Western avenue across streets, and over the railway tracks, by an inclined approach, and thence down to the dumping ground or hole, which was on Myers' property. It was a narrow, single wagon road, and had been, for months prior to the accident, in very bad condition, and so full of holes that, as one of the plaintiff's witnesses testified, "in walking you had to keep in the center of the road, otherwise you would go into these holes." This witness, Roehr, testified: "There were holes there before the accident; I couldn't tell how deep they were; I would notice wagons getting stuck west of the railroad;

sometimes the wheels would go down to the hubs pretty near, and the wagons would pull out and leave a hole there; I could see the hole; I often walked over there to the brick yard and didn't drive." Other witnesses testified to the dangerous condition of the road. The appellee had driven over this road numerous times before the accident, and must have known its condition. It was made by a former owner of the Myers property, who also was a brick maker, for his own convenience. The railway bed on which the tracks were laid was elevated to a considerable height above the natural surface of the ground, and on each side of the tracks the roadway had been raised on an incline towards the tracks by the brick makers, for the purpose of ascending to the tracks and descending from them, in crossing them.

The plaintiff undertook to prove that the road was a public highway, but the evidence shows not only that it was not, but that it could not have been a public highway. It was intercepted by a brick yard east of Western avenue, by a brick yard west of Western avenue, by the railway bed and tracks and by a ditch, and ended at Myers' brick yard. The part of it west of the railway tracks, where the accident occurred, was on the ninety feet canal reservation, south of the canal. This is abundantly shown by the evidence, and is admitted by plaintiff's counsel. This being so, it could not have been made a public highway. Section 1 of the act of Congress, granting the canal lands to the state, provides: "That the State of Illinois be, and is hereby authorized to survey and mark, through the public lands of the United States, the route of the canal connecting the Illinois river with the southern bend of Lake Michigan; and ninety feet of land on each side of said canal shall be forever reserved from any sale to be made by the United States, except in cases hereinafter provided for, and the use thereof forever shall be, and the same is hereby vested in the said state for a canal, and for no other purpose whatsoever," etc. 2 Adams & Durham's Real Estate Statutes, p. 1749.

There was a road to reach the dumping hole which was safe, and which the evidence shows was used by about two-

thirds of the teamsters who were hauling refuse to the dumping hole.  This road was by way of 35th and Rockwell streets, both of which are public streets.  Mr. Myers testified, without contradiction, that in 1896 he had a road constructed with ties covered with dirt, which was pretty level and all right, from the dump to 35th street, and' that the latter street was paved.  Wagons could pass along 35th street, which is an east and west street, to and from Rockwell street.  Plaintiff and other teamsters took the road where the accident occurred merely for their own convenience, because it was a shorter road than the safe way above described.  One witness testified that it was a short cut through the prairie.  This is the second appeal of this case. On the former appeal the Branch Appellate Court reversed and remanded the cause, holding that, on the evidence, the city was not liable.  City of Chicago v. Hannon, 94 Ill. App. 143.  In that case the court say: " The road in question was not a highway.  It had never been used as such by the public at large.  It was used as a driveway merely by the toleration of the owners of the land.  The only reason, apparently, that the permission of the foreman to fill up the holes was even sought by the teamsters was, as one of them testifies, ' of course if we didn't dump our loads where he told us we would not get our tickets punched.'  The only duty of this foreman was ' to direct teams when they came into the dump, to take down the number of such teams, and to make a report every day.' We know of no warrant for holding that every city employee, no matter what his duties or the scope and nature of his employment, can impose liability upon the city in any such way.  The foreman had no authority to direct or even authorize the teamsters to dump the contents of their wagons, or any part thereof, anywhere but in the dump. Surely the city cannot be held to have undertaken to make repairs upon and keep in good condition a driveway over private lands not in its possession or control, because one of its employees, without authority, directs a few teamsters to fill up holes upon such land over which they have chosen

to drive for their own convenience.   We are not referred to any authorities sustaining appellee's contention, and it is safe to assume that none exist."

Plaintiff in the present case proved that Rhode, the city superintendent of street and alley cleaning, gave instructions to the foreman of the dump to have the teamsters dump or deposit ashes along the road in question, which the foreman did, and counsel contend that Rhode was authorized by an ordinance, in evidence, to give such instruction, and that the city is bound thereby.   Counsel claim that the introduction in evidence of this ordinance distinguishes this from the former appeal.   The ordinance is entitled " An ordinance to create and establish a division of the department of public works to take charge of cleaning of the streets and alleys of the city of Chicago and matters cognate thereto," and consists of sixteen sections. By the ordinance the office of "superintendent of street and alley cleaning " is created, and the duties of the superintendent are prescribed.   We have carefully examined this ordinance and find nothing in it authorizing the superintendent of street and alley cleaning to repair or cause any street to be repaired, and would be very much surprised to find any such authority in the ordinance, as it is well known that the repair of streets is committed to another division of the city government.   Rhode, himself, testified that he had no authority to make general repairs or order general repairs made.   This is not like the case where the city accepts the dedication of a street or highway, when, after accepting it, it is its duty to improve and maintain it in a suitable condition for public travel.   The road in question is not a city street or highway, and there was no obligation resting on the city to repair it, if it had the power so to do, which is, at least, questionable.   A municipal officer can only exercise such power as is conferred on him by law, or by ordinance passed in pursuance of law.   His acts, in the absence of power so conferred, do not bind the municipality.   1 Dillon on Municipal Corporations, 4th ed., secs. 447, 457, 531.

If the city can be held liable in this case, then it could be held liable if the dumping ground were outside its territorial limits, and the superintendent of street and alley cleaning should authorize the dumping of ashes on a private road leading to it, also outside the city limits.

The judgment will be reversed.

*Reversed.*