City Trust & Savings Bank, Kankakee, Illinois, Administrator of the Estate of William C. Baird, Deceased, Appellee, v. City of Kankakee, Appellant.

Gen. No. 8,056.

Opinion filed August 29, 1929. Rehearing denied October 16, 1929.

VICTOR N. CARDOSI and WERNER W. SCHROEDER, for appellant.

MILLER & STREETER, for appellee.

MR. PRESIDING JUSTICE BOGGS delivered the opinion of the court.

An action on the case was instituted in the circuit court of Kankakee county by appellee, hereinafter called plaintiff, against appellant, hereinafter called defendant, to recover for the death of plaintiff's intestate.

The original declaration was filed December 15, 1926. The first count charges that on April 16, 1926, the City of Kankakee was in possession of a certain stone quarry located near Entrance Avenue, one of the public streets of said city; that said stone quarry had therein a body of water, to wit, 25 feet deep, into which water the defendant "had been dumping rubbish, consisting of leaves, straw, sticks, crates, barrels and dirt,

and which rubbish rested upon the surface of said water, immediately adjoining the east bank of said quarry; . . . that defendant did not then and there maintain a fence to prevent people from passing from Entrance avenue to the land surrounding said quarry, and did not then and there maintain any signs that the same was a dangerous location''; that plaintiff's intestate, then of the age of 9 years, ''was attempting to rescue a ball, which was then and there the property of the said William C. Baird, and which said ball had then and there escaped from the said William C. Baird and was then and there in the water in said quarry; . . . and while attempting to rescue said ball, sank through the rubbish and into said water, and was drowned.''

The second count is in effect the same, as the first, other than it charges the defendant with the ownership of said premises. A demurrer to each of said counts, filed by the defendant, was overruled.

Thereafter, on April 9, 1927, being one of the regular days of the January term, 1927, of said court, leave was given plaintiff to amend its original declaration, and to file additional counts. On September 12, 1928, three additional counts were filed.

The first additional count is similar to the first original count except that it states that the City of Kankakee ''had been dumping or permitting to be dumped'' said rubbish, etc., which it ''carelessly and negligently permitted to rest upon the surface of said water, adjoining the east bank of said quarry.''

The second additional count is in effect the same as the first additional count, except it charges the dumping, etc., of rubbish by the city. The third additional count is substantially the same as the second additional count, except that it alleges the ownership of said premises by said city. Each of said original counts and said additional counts allege that prior to

and at the time of said accident, plaintiff's intestate was in the exercise of ordinary care for his own safety.

Demurrers to said original and additional counts being overruled, defendant filed a plea of the general issue and certain special pleas, setting forth that the defendant did not own, possess, operate or control the said tract of land, etc., and also certain special pleas averring that said cause of action did not accrue within one year preceding the institution of said suit.

Replications were filed to said special pleas, and a trial was had, resulting in a verdict and judgment in favor of plaintiff for $1,500. To reverse said judgment, this appeal is prosecuted.

The record discloses that for a great many years the premises in question had been used as a stone quarry by the Kankakee Stone and Lime Company. Since about 1921, the City of Kankakee, the Village of Bradley, and certain private individuals, hotels and industrial corporations had been using said pit for the dumping of dirt, leaves, ashes, brush, garbage, etc. North of said quarry is Soldier Creek, which had once been separated from the quarry by an embankment, but in 1926 the street commissioner cut a hole through the embankment, so as to permit the creek to flow into and through said quarry. The water in the pit was shown to have been, in some places, 15 to 20 feet deep.

Plaintiff's intestate, on April 16, 1926, was 9 years old, was in the fifth grade and was shown to have been an intelligent child for his age. He had been playing with one William Purkheiser, who at the time in question was 11 years of age. William Purkheiser testified that they were coming from the home of the intestate, going south on Entrance Avenue; that as they were at the bridge crossing Soldier Creek, he stood below and threw the ball to the deceased, who was standing on the bridge. The ball fell back into the water of the creek, and floated downstream into the quarry from

the north; that plaintiff's intestate entered on said premises for the purpose of rescuing his ball. He stepped on some plank or rubbish, sank through, and was drowned. Jimmy Zereitis and Tony Zereitis, aged respectively 9 and 8 years, testified that they lived near the southeast corner of the quarry; that on the day in question the deceased and his playmate came along the street, playing catch; that the ball went over the head of the deceased and rolled down the embankment; that "they both (the boys) climbed over the fence"; that deceased went down to the edge of the water, stepped on the rubbish in attempting to rescue his ball, sank through and was drowned.

The record shows that at one time said premises were fenced by the city, but at the time in question a part of the fence had been removed, the testimony on the part of the plaintiff tending to show that several hundred feet had been removed, while the testimony on the part of the defendant was that only a small opening had been made, through which teams could pass in hauling the rubbish. It is practically conceded that the possession and control of the premises was in said city. At any rate, the evidence preponderates to that effect.

It is seriously insisted by the defendant that there can be no recovery in this case, for the reason that a different cause of action is set forth in the original declaration as amended from that set forth in the additional counts, in that the original declaration charged that the death of plaintiff's intestate occurred on April 16, 1925, whereas the declaration as amended and the additional counts set forth that the same occurred on April 16, 1926.

While the record discloses that leave was given to plaintiff to amend its declaration, there is nothing to show that any amendment was made. The charge in the original declaration and the additional counts is

that the death of plaintiff's intestate occurred on April 16, 1926. Counsel for defendant set forth that the original declaration was amended on its face. The record, however, does not so disclose. Counsel for plaintiff seem to acquiesce in defendant's position with reference to the amendment of the original declaration. It is not for the parties to stipulate or agree as to the state of the pleadings or as to evidence in a cause. This must be shown by the record. *Harding v. Brophy,* 133 Ill. 39–44; *Stock Quotation Tel. Co. v. Chicago Board of Trade,* 144 Ill. 370–372; *Mosher v. Scofield,* 55 Ill. App. 271–274; *Knickerbocker v. Ft. Dearborn Trust & Sav. Bank,* 219 Ill. App. 409–416.

. On page 8 of the record it is set forth that "on the 14th day of December, A. D. 1926, the plaintiff, by Miller and Streeter, its attorneys filed in said cause in said Court its certain narr., copy of which is as follows, to wit:"

On page 9 of said record, purports to be set forth the original declaration, each count of which avers, among other things: "For that, whereas, on, to wit, the 16th day of April, A. D. 1926, the said defendant," etc.

The defendant is therefore not in a position to insist on this assignment of error, so far as the original declaration is concerned. It is not necessary to pass on this assignment of error as to the additional counts, for the reason that the additional counts, in their averments, are substantially the same as the original counts.

At the close of the plaintiff's evidence, and again at the close of all the evidence, motions were made by defendant to exclude the evidence and to direct a verdict in its favor. These motions were denied, and it is strenuously insisted that the court erred in so ruling. In this connection, it is insisted that there can be no recovery for the reason that the maintenance of said

dumping-ground was a police regulation, governmental in character, and that a city is not liable for the neglect of its servants in such capacities. Had the defendant been acting under a municipal ordinance in the matter of the disposal of its garbage, etc., there would have been much force in this contention. *Consumers' Co. v. City of Chicago,* 313 Ill. 408–413.

There being no such ordinance, we would not be warranted in so holding.

It is also contended that, on the whole record, no right of action is shown.

The negligence charged in the declaration is that the city failed to fence said dumping ground so as to prevent persons from passing from Entrance Avenue on to the premises surrounding said quarry or pit.

"The owner of land and of buildings assumes no duty to one who is on his premises by permission only, and as a mere licensee, except that he will refrain from willful or affirmative acts which are injurious." *Gibson v. Leonard,* 143 Ill. 182–189; *Casey v. Adams,* 234 Ill. 350–356; *Marcovitz v. Hergenrether,* 302 Ill. 162–167.

It is also "an unquestioned general rule that the owner or occupier of private grounds is under no obligation to keep them in any particular state or condition to promote the safety of trespassers, intruders, idlers, bare licensees, or others who come upon them without any invitation, either express or implied; and this general rule applies equally to adults and children." *McDermott v. Burke,* 256 Ill. 401–405; *Darsch v. Brown,* 332 Ill. 592–595.

"An exception, however, to this general rule exists in favor of children. Although a child of tender years, who meets with an injury upon the premises of a private owner, may be a technical trespasser, yet the owner may be liable, if the things causing the injury have been left exposed and unguarded, and are of such

a character as to be attractive to the child, appealing to his childish curiosity and instincts. Unguarded premises which are thus supplied with dangerous attractions are regarded as holding out implied invitations to such children." *City of Pekin v. McMahon,* 154 Ill. 141–148; *Ramsay v. Tuthill Bldg. Material Co.,* 295 Ill. 395–399.

It is, however, a "necessary element of the liability that the thing which causes the injury is tempting to children, and to constitute a means of attracting them upon the premises, which the owner should anticipate. The dangerous thing must be so located as to attract them from the street or some public place where they may be expected to be." *McDermott v. Burke, supra,* 407.

"Another essential condition to liability is that the attractive thing, or something inseparably connected with it, must be the proximate cause of the injury. (*Seymour v. Union Stock Yards & Transit Co.,* 224 Ill. 579.)" *McDermott v. Burke, supra,* 407. To the same effect is *Darsch v. Brown, supra,* 596.

While we have quoted the holding of the Supreme Court with reference to the exception made in favor of children, we have done so in order to clearly set forth that, where such attractive nuisance was the proximate cause of the injury, said general rule prevails.

No charge is made in plaintiff's declaration of wilful or wanton conduct, nor is the declaration framed on the theory that the place in question constituted an attractive nuisance. Counsel for appellee, in their brief and argument, say:

"There is no question of attractive nuisance or of willful and wanton action in the case. If it is not negligent for a city to maintain a *locus in quo* under the conditions as set forth in the narr., and as supported by the evidence in the case, then the judgment of the circuit court should be reversed, and the cause should not be remanded."

It therefore follows as a logical conclusion that there can be no recovery in this case. There is no evidence in the record showing wilful or wanton conduct, or the existence of an attractive nuisance, nor is there any evidence proving or tending to prove that children were wont to play in or around the premises in question. Even if it be held that the evidence tended to show that said quarry or pit was attractive to children, such attractiveness was not the proximate cause of the accident in question. That was caused by plaintiff's intestate seeking to recover his lost ball, which fell into the creek and floated down into the quarry.

There was some evidence tending to show that the pit or quarry extended for a few feet into Entrance Avenue. If that be true, it would not affect the decision of the case, for the reason that plaintiff's declaration charges that the pit or quarry was near Entrance Avenue, and that the city was liable for not fencing said quarry or pit so as to protect persons passing from Entrance Avenue to the premises surrounding said pit, etc. The allegations of the declaration and the proof must correspond, in order to maintain a right of recovery. *Wabash R. Co. v. Billings,* 212 Ill. 37–39; *Feder v. Midland Casualty Co.,* 316 Ill. 552–559; *Hardy v. Dobler,* 248 Ill. App. 361–369.

It might be observed, however, that if the declaration had charged that the pit in question extended into Entrance Avenue, the evidence fails to show that that was the proximate cause of the injury. Plaintiff's intestate did not fall into the pit, but entered it voluntarily.

In determining the liability of a city in cases of this character, the same rule is to be applied as is applied where an individual is sought to be charged (assuming that the city is not acting in a governmental capacity, where there would be no liability). *City of Pekin v. McMahon, supra,* 154; *City of Chicago v. Hannon,* 94 Ill. App. 143–146.

498

Taking the evidence of the plaintiff as true, with all reasonable inferences to be drawn therefrom, and giving to the whole evidence the aspect most favorable to the plaintiff, it does not disclose a right of recovery. The court, therefore, erred in refusing to direct a verdict for the defendant.

For the reasons above set forth, the judgment of the trial court will be reversed.

There being no charge of attractive nuisance or of wilful and wanton conduct in the declaration, we find as an ultimate fact, to be incorporated as a part of the judgment in this case, that the uncontradicted evidence discloses that plaintiff's intestate, just prior to and at the time of said accident was a trespasser upon the premises occupied and controlled by the defendant, and that, taking plaintiff's evidence as true, with all reasonable inferences to be drawn therefrom, it fails to disclose any right of recovery.

*Judgment reversed.*