Andrew Rost, Jr., Administrator, Plaintiff in Error, v. The Parker Washington Company, Defendant in Error.

### Gen. No. 17,551.

1. INSTRUCTIONS—*directing verdict.* It is a well settled rule that where there is no evidence, or but a scintilla of evidence tending to prove the material averments of the declaration, a verdict should be directed for the defendant, yet when there is evidence from which, if it stood alone, the jury could, without acting unreasonably in the eye of the law, find that all the material averments have been proved, the case should go to the jury.

2. NEGLIGENCE—*places attractive to children.* As a general rule the law does not require that premises be kept in safe condition for the benefit of trespassers, yet there is an exception in favor of young children where the things causing the injury have been left unguarded and are of an attractive character such as appeals to their curiosity and instincts.

3. NEGLIGENCE—*when error to direct a verdict.* In an action for the death of a child caused by falling into a river while playing on a sand pile on the premises of defendant, it is error to direct a verdict for defendant where there is evidence that children were permitted by the defendant's watchman to play on the premises, that there was a thickly populated district near and also a street along the premises, and the sand pile was so situated that a fall from it would naturally cause a fall into the river.

Error to the Superior Court of Cook county; the HON. GEORGE A. CARPENTER, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1911. Reversed and remanded. Opinion filed January 9, 1913.

F. W. JAROS, for plaintiff in error.

MCARDLE & MCARDLE, for defendant in error.

MR. JUSTICE FITCH delivered the opinion of the court.

This writ of error brings up for review a judgment for the defendant, entered upon a directed verdict. The instruction to find the defendant not guilty was given at the close of the plaintiff's evidence in an action brought under the statute for wrongfully causing the death of plaintiff's intestate, a boy ten and one-half years of age. The theory of the declaration is that defendant maintained an "attractive nuisance" on its premises, near to a public street in a populous neighborhood, in the shape of a huge sand pile located so close to the bank of the Chicago River that while the boy was playing on the same with other boys, as they were accustomed and had been permitted to do, he tripped, fell and rolled into the river and was drowned.

It is claimed by defendant in error that there can be no liability in this case because, it is said, the sand pile was not located near a public street, nor in a populous neighborhood; that a sand pile, in itself, is not dangerous, and that the evidence shows that the boy was not attracted by it but by the river, and that in any event, the deceased and his parents were guilty of contributory negligence.

After a careful study of the evidence in the light of these contentions, we think there is some evidence at least which, if believed by the jury, fairly tends to prove the following state of facts. The accident occurred in July, 1906. The defendant's place of business or plant is located between the Chicago River and an elevated embankment about three hundred feet away, flanked by stone retaining walls, upon which run the tracks of the Chicago & Northwestern Railway, and between two streets, known as Dix Street and

Lessing Street in Chicago. When the tracks of the railroad were elevated, the parts of both Dix Street and Lessing Street which lie between the embankment and the river were made stub ends by the construction of the embankment across both streets. There was another street, however, at that time, running parallel to the embankment, about midway between the embankment and the river, and this street led to Sangamon Street, which is the next street beyond Lessing Street. A viaduct or subway was constructed on Sangamon Street, permitting the passage of teams and vehicles under the tracks of the railroad and into the space between the railroad embankment and the river. This street, parallel to the embankment, is called Cornell Street by some of the witnesses and Dix Street by others. Defendant's wagons entered its premises by driving under the viaduct above mentioned into Cornell Street, and thence directly into its plant. There was a switch track in Cornell Street leading from defendant's plant along the center of Cornell Street to and beyond Sangamon Street and a wagon road on either side of the switch track. On one side of this street there was also a sidewalk leading to defendant's plant. A claim is made by counsel for defendant in error that that portion of the stub end street known as Dix Street, running alongside of defendant's plant from the embankment to the river, had been vacated, but this claim rests entirely upon the evidence of a blue print contained in the record, which is supposed to be a copy of a map offered in evidence by the plaintiff upon the trial. An examination of this blue print discloses the fact that it is a photographic copy of a map which was made in April, 1909, several years after the accident and several months after the trial. Hence, it is clear that this blue print was inserted in the record by mistake, and is not a copy of the map used upon the trial. At the time of the accident there was a pile of sand "as large as a small house," twenty or thirty feet wide and of considerable height, alongside of defend-

ant's yard and in the stub end of Dix Street. One end of this sand pile was close to the river bank which, at this point, is composed of piling rising four feet above the water. The sand pile could be seen from Sangamon Street, and it appears that boys living in the neighborhood which, beyond the embankment is a very thickly populated district, were in the habit of playing in the sand, without objection on the part of defendant. On Sunday, July 15, 1906, about two o'clock in the afternoon, the plaintiff's intestate was playing with four other boys in a puddle of water under the Sangamon Street viaduct. One of them proposed to go over to defendant's yard to play "tag." They walked down Cornell Street, following some wagons into the yard, which was not fenced or enclosed in any manner, and started to play on and about the sand pile. Defendant's watchman saw them enter the premises but offered no objection. On the contrary, there is some evidence that he asked one of the boys to get a pail of beer for him and the boy did so. The boy, Parot, was "it" in the boys' game, and while running on top of the sand pile towards the river he stumbled, fell on the sand, rolled down the side to the dock and thence into the river. It appears that deceased had been attending school for two years and a half before his death, but was still in the "baby class," and was not as bright as boys of his age usually are.

Upon a motion for a directed verdict, the rule is well settled that "if there is no evidence, or but a scintilla of evidence, tending to prove the material averments of the declaration, the jury should be directed to return a verdict for the defendant. If however, there is in the record evidence from which, if it stood alone, the jury could, without acting unreasonably in the eye of the law, find that all the material averments of the declaration have been proven, the case should go to the jury." Libby, McNeill & Libby v. Cook, 222 Ill. 207, 212.

In City of Pekin v. McMahon, 154 Ill. 141, it was held, that while, as a general rule, the law does not

require the owner of land to keep his premises in safe condition for the benefit of trespassers or those who come upon them without invitation, either express or implied, yet there is an exception to this rule in favor of young children "if the things causing the injury have been left exposed and unguarded, and are of such a character as to be an attraction to the child, appealing to his childish curiosity and instincts."

In Stollery v. Cicero & Proviso St. Ry. Co., 243 Ill. 290, it was said: "Under the decisions of this state unguarded premises supplied with dangerous attractions are regarded as holding out an implied invitation to children, which will make the owner of the premises liable for injuries to them even though the children be technical trespassers. Whether or not such premises are attractive to children is a question for the jury. City of Pekin v. McMahon, 154 Ill. 141; Siddall v. Jansen, 168 Ill. 43; True & True Co. v. Woda, 201 Ill. 315." To the same effect are Linnberg v. City of Rock Island, 136 Ill. App. 495; s. c., 157 Ill. App. 527; Lake Erie & W. R. Co. v. Klinkrath, 130 Ill. App. 322, rev'd 227 Ill. 439. The exception thus stated has been qualified, however, in some of the cases to this extent; that the attraction must be upon premises adjacent to a public street or other public place where children of tender years may rightfully go, and the situation must be such as to charge the owner of the premises with knowledge of the danger to children if left unguarded or unprotected. St. Louis, V. & T. H. R. Co. v. Bell, 81 Ill. 76; Hanna v. Iowa Cent. R. Co., 129 Ill. App. 134; Grauslis v. Kellyville Coal Co., 127 Ill. App. 311; Heimann v. Kinnare, 190 Ill. 156.

To the contention that there is nothing dangerous *per se* in a sand pile and that, therefore, it is not, in and of itself, an attractive nuisance, it is enough to say that if this be conceded, yet when the sand pile is placed so near to the bank of a river that a fall from the sand pile would naturally cause a child to fall into the water, it must be regarded as dangerous. and

that the danger therefrom is such that it should reasonably be anticipated and guarded against by the owner of premises located adjacent to a public street. At all events, these are questions of fact for the jury to determine.

For the reasons indicated, we are of the opinion that the court erred in giving the peremptory instruction. The judgment of the circuit court will therefore be reversed and the cause remanded for a new trial.

*Reversed and remanded.*