Harry S. Holmberg, Administrator of the Estate of Roy H. Holmberg, Deceased, Appellee, v. City of Chicago and Harry Bairstow, Appellants.

## Gen. No. 31,320.

1. EVIDENCE—*what a scintilla of evidence is.* A scintilla of evidence, at its maximum, is that evidence which merely gives rise to a faint suspicion, which is not enough to take a question to the jury.

2. TRIAL—*facts closely contested in evidence, for jury.* If the facts in a case are closely contested in the evidence the case should be given to the jury rather than be left to the judgment of the trial judge alone.

3. HIGHWAYS AND STREETS—*properly guarding sand pile in city street as jury question.* In an action by a father for the death of his 11-year-old son by smothering in a sand pile into which he had dug and which defendant city had allowed the defendant contractor to pile some 8 feet high in the public street, the question whether the defendants were negligent in not properly guarding the pile as a dangerous and attractive nuisance to children of tender years, is for the jury to determine.

4. HIGHWAYS AND STREETS—*location of attractive nuisance in public street.* That an 8-foot high sand pile in which a boy of tender years was suffocated was in a public street, is important in determining whether the evidence justified submitting to the jury the action of the boy's father to recover damage for his son's death from the city and the contractor whom it allowed to place the sand in the street.

5. HIGHWAYS AND STREETS—*instruction reciting ordinance against storage in public street.* An instruction was not erroneous in reciting an ordinance which made it unlawful to occupy a street for storage, in an action for damages by the father of a 11-year-old boy suffocated in an 8-foot high pile of sand placed in the city street by an excavating contractor who allowed it to remain there five days before the accident.

6. NEGLIGENCE—*rule as to contributory negligence of child.* The true rule to determine whether a child of tender years was guilty of contributory negligence in being suffocated in a sand pile allowed to remain on the street by the city is that such a child is only required to exercise that degree of care for his own safety which a child of his age and intelligence, capacity, discretion and experience would naturally and ordinarily use in the same situation and under the same circumstances.

7. HIGHWAYS AND STREETS—*instruction on city's duty to keep streets safe, in action for child's injuries.* In an action against a city and the

contractor whom it had allowed to place an 8-foot high pile of sand in a public street, by the father of an 11-year-old boy who had been suffocated therein, an instruction on the duty of the city to keep the public streets in a reasonably safe condition is not objectionable.

THOMSON, J., dissents.

Appeal by defendants from the Circuit Court of Cook county; the Hon. WALTER BREWER, Judge, presiding. Heard in the third division of this court for the first district at the October term, 1926. Affirmed. Opinion filed June 13, 1927.

CASSELS, POTTER & BENTLEY, for Harry Bairstow, appellant; RALPH F. POTTER and KENNETH B. HAWKINS, of counsel.

JOHN J. KELLY, SAMUEL A. ETTELSON, Corporation Counsel, and WILLIAM D. SALTIEL, City Attorney, for City of Chicago, appellant; DANIEL V. GALLERY, Assistant Corporation Counsel, of counsel.

CHARLES C. SPENCER and ARTHUR A. HOUSE, for appellee.

MR. PRESIDING JUSTICE TAYLOR delivered the opinion of the court.

This is an action for damages brought by the plaintiff, Harry S. Holmberg, as the administrator of the estate of his son, Roy H. Holmberg. The action is based on the claim that the death of his son Roy was caused by the defendants' negligence in creating and permitting a large pile of sand to be built up and remain in a public street. There was a trial before the court, with a jury, and a verdict and judgment for the plaintiff in the sum of $6,000. This appeal is from that judgment.

In the fall of 1922, one Anderson undertook the erection of a 15-apartment building on the southeast corner of Pinegrove and Oakdale Avenues, in Chicago.

Bairstow, the defendant, had the contract to do the necessary excavating. He removed the top soil and carted it away. In doing that work, he used a steam shovel. On the Saturday morning before Thanksgiving Day, in 1922, he began the work of further excavation, using a teamster with a team of horses and a two-handle scoop. The scoop held from 5 to 7 cubic feet of sand. After getting the scoop full of sand, the teamster would drive the team out into the parkway, on the Pinegrove Avenue side, and near the south end of the building site, then turn north and dump the scoop, and then turn back to the excavation, and repeat the operation. The teamster continued to work until late Monday afternoon. The sand which he had removed and placed in the street made a pile extending north and south along the east side of Pinegrove Avenue, probably more than 50 feet in length. Its height was probably something over 8 feet (several witnesses placed the height from 6 to 7 feet, one from 9 to 10 feet, and one at "a good ten"). The top of the pile was somewhat crushed down, owing to the team of horses and the scoop passing over it from end to end. The sides of the pile sloped away to the east and to the west at the angle in which the sand normally, as a matter of gravity, came to rest, and on the east side, the bottom of the pile ran along the west side of the sidewalk. On the west side, the bottom of the pile extended west probably beyond the middle of the street, the street being about 32 feet from curb to curb.

Roy Holmberg, a boy 11 years of age, lived on Oakdale Avenue, half a block west of Pinegrove Avenue. About 7.30 Wednesday evening, November 29, 1922, the day before Thanksgiving, being at home with his brothers and sisters, his parents having gone to see a friend, he put on his hat and went out, saying that he was going for some sand. About 9 o'clock, when

his parents returned, he was still absent. They were alarmed, and began a search for him, which continued through the night. About six o'clock the next morning, the boy's father found his body on and partly in the sand pile. A milkman, who went to the father's assistance, testified that when he first saw the father, the latter "was standing on top of the sand pile. * * * he had pulled the boy out of a little hole,—he was lying in it"; that the hole was "very near the top" of the sand pile,—"nearly the center from north to south," and "about the center from east to west." He further testified that the boy's head was toward the east, and his body was on the west side of the sand pile, west of the street side of the sand pile.

In describing his discovery of his son's body, the father testified, "There was a straight slope out possibly about two feet and a straight slope from the top, * * * I saw the shoes with his toes turned down. I saw his stockings, his trousers and part of his waist sticking out, and the rest of his body was in a sort of a hole that sloped up. The sand pile, where he was lying, was on the level, and this spot had a slight slope on this side. * * * it covered him to the bottom of his waist. * * * It was partially sticking out."

No evidence was submitted as to just how the boy's head and shoulders and the upper part of his trunk came to be covered with sand. However, it would seem to be a justifiable inference from the testimony quoted above that he dug a hole or tunnel in the sand pile west of its north and south center line and very near the top, making, as his father described it, "a sort of a hole that curved up,—sloped up," and that, as he was digging this hole or tunnel, and had the upper part of his body, including his arms, in the hole he had dug, the sand above and around caved in and suffocated him. The coroner's physician gave it as his opinion that death was due to suffocation.

The declaration contained five counts. The plaintiff, to sustain the judgment, relies on the fourth count. That count charges that the defendants permitted this sand pile to remain in the street for a long space of time in such shape and formation "that divers parts thereof were likely to slip, cave in and fall"; that it was attractive to children and that many of them, with defendants' knowledge and consent, played on it while it remained in this dangerous condition; that defendants, carelessly and negligently, failed to "guard or protect children in any manner from coming in contact with the pile of sand while in such dangerous shape and formation," by means whereof the boy while using ordinary care for his own safety, and without fault or negligence on the part of his parents, was suffocated and lost his life, when "a large quantity of sand caved in, slipped, slid and fell upon" him.

There is no contention that the boy's parents were guilty of negligence. The testimony is that he was of a careful disposition and that his mother had cautioned him about keeping away from the excavation being made at the place in question. In our opinion, the contention of defendants that the boy was guilty of contributory negligence as a matter of law is not tenable. At most, from the standpoint of the defendants, it was a question for the jury to pass upon, from all the evidence. As our Supreme Court has repeatedly said, "The law is clearly established by great weight of authority, that between the ages of seven and fourteen the question of culpability of the child is an open question of fact and must be left to the jury to determine, taking into consideration the age, capacity, intelligence and experience of the child." *Maskaliunas v. Chicago & W. I. R. Co.*, 318 Ill. 142.

The chief question in the case is whether the defendants were guilty of negligence. It may be assumed, as a matter of common knowledge, that a pile of sand, especially when located on a public street, would

prove attractive to the children of the neighborhood. That it did so prove, in fact, is shown by the testimony of the witness Anderson, the owner of the property in question, who testified that several times he had seen children about the sand pile digging caves, and had chased them away. The question then arises, Did the sand pile, in the form in which it was permitted to remain in and along Pine Grove Avenue for some days, present a dangerous situation? And further, Should the defendants have been forewarned, when reasonably considering the matter, that if the sand pile were permitted to remain as it was, injury was likely to occur to some child who might be there to play?

If the facts are such that reasonable minds would draw therefrom no other inference than that what was done was ordinary and permissible as a matter of conduct, the question presented is said to be one of law, and a verdict should be directed for the defendant, but if, in view of all the facts, reasonable men might differ as to whether there was negligence, an issue of fact is presented for the determination of the jury.

If the sand pile in the street had been 30 or 40 feet in height, few, if any, would be expected to conclude that it was not dangerous to children; on the other hand, if it had been only 1 or 2 feet high, none would be expected to hold that it was. Here, then, the question arises, Would the mind of the average man conclude, where the evidence shows the pile of sand was a little over 8 feet high, that it was a source of danger? Is it not a question of fact for the jury? Is it reasonable to say as to the physical situation—bearing in mind the known instincts of children, their love of digging and burrowing in sand, the deeper, the greater the pleasure—that the danger was so slight, seemed so nonexistent, or so highly improbable, the law would not justify submitting the evidence to the jury to determine the question of fact whether or not it was danger-

ous? In the necessary absence of some fairly definite and persuasive standard of measure, of course it is difficult to determine just when there is enough evidence to go to the jury, and when there is not. The difference between a scintilla which, at the maximum, might be defined as evidence which merely gives rise to a faint suspicion—*Libby, McNeill & Libby v. Cook,* 222 Ill. 206—and which is not enough, and on the other hand, that evidence which suggests quite seriously not only a possibility, but something not obviously unreasonably probable, and which is enough, is in reality a matter of weight and persuasion, and is, to a certain extent, dependent upon a determination of matters of fact by the trial judge, and, as our system of jurisprudence applies with special emphasis the principle that facts generally are to be found by the jury, and not by the judge, where a case is close, it would seem to be more reasonable to err, if at all, in favor of the submission of the evidence to the jury, than to be satisfied with the judgment of the trial judge alone.

In nearly every case where the question has arisen, the *locus in quo* was privately owned property, and the child, in the nature of a trespasser, a condition that would not be, in all probability, as alluring, and therefore not fraught with as much danger, as where the *locus in quo* was a public street, created for, and to be used freely by all, its very existence inviting and implying user.

The question arises whether Bairstow, or the City or both, did or failed to do something in a reasonably careful way, and as a result of the omission or commission, the boy, without negligence on his part, was killed. In the instant case, at first blush, knowing the instincts and the natural urge of children to play and make certain childish adventures, and particularly their natural liking, one might almost say passion, for a sand pile as a source of pleasure, one is inclined to conclude that just such a calamity as happened

might have been expected, or anticipated, or thought of as not unreasonably probable. Certainly it must be considered as proper to charge Bairstow and the City with the knowledge that children would go there and would play about, on, and dig into the sand pile. Being chargeable with that knowledge, would they also be expected to realize that if children did go there and play and dig, that some one might, by so playing and digging, get in deep enough to be injured? What knowledge they had and what, considered as average reasonable persons, they were bound to expect, were matters of fact. Were they such that all reasonable minds would, as to the same circumstances, conclude that there was no fault or lack of care in maintaining the sand pile as it was? We do not think so. We might almost take judicial notice that such a sand pile in a public street is inviting to children. As to its danger, it may well be said that no average, thinking citizen would confidently expect it to do harm, but, on the other hand, he might well reason that it could very easily become, as the result of digging, even in play, a serious danger, and such being the situation, it would seem that, under the law, it was not only proper, but necessary to submit the matter, as a question of fact, to the jury. It was so submitted, and the jury found that the defendants were guilty of negligence. Are we now entitled to override that verdict? We do not think so.

In *Stedwell v. City of Chicago,* 297 Ill. 486, where a child climbed 13 feet up the latticework fastened to the side of a post in a street, and when he reached the top, came in contact with an arc light wire and was severely injured, the court said: "Where an attractive thing is so located that in yielding to its allurement a child is brought in direct contact with a danger placed there by someone else, the person responsible for creating the dangerous condition will be liable. (*Seymour v. Union Stock Yards Co.,* 224 Ill. 579; Mc-

*Dermott v. Burke*, 256 id. 401; *Commonwealth Electric Co. v. Melville*, 210 id. 70; *Electric Light Co. v. Healy*, 65 Kan. 798.) Whether the pillar was so attractive to children in their sports as to suggest the probability of the accident was a question for the jury. (*City of Pekin v. McMahon*, 154 Ill. 141; *Stollery v. Cicero Street Railway Co.*, 243 id. 290.) Plaintiff in error concedes there was testimony that children played 'around these pillars.' Under that state of the record the judgment of the Appellate Court is conclusive upon that question. The pillar and the cross-pieces on it, which gave it a ladder-like appearance, were not constructed by and did not belong to plaintiff in error. In using it in his play defendant in error was not a trespasser as to plaintiff in error. So far as it was concerned, defendant in error was rightfully on the pillar. *Commonwealth Electric Co. v. Melville, supra; Nelson v. Bramford Lighting and Water Co.*, 75 Conn. 548; *Union Pacific Railway Co. v. McDonald*, 152 U. S. 262.''

In *Deming v. City of Chicago*, 321 Ill. 341, which was an action against the City of Chicago for the wrongful death of a child nine years of age, who was electrocuted while climbing a tree in a public street, the court said:

''This injury occurred in a tree in a public street and the deceased was, therefore, not a trespasser at the time he was killed. (*Stedwell v. City of Chicago*, 297 Ill. 486.) Plaintiff in error was bound, in placing in the street wires which carried a heavy load of electricity, to guard against accidents by the exercise of that degree of care commensurate with the danger incident to the use of such a dangerous agency. (*Hausler v. Commonwealth Electric Co.*, 240 Ill. 201.) Whether the tree located in the public street was so attractive to children in their sports as to suggest the probability of such an accident as occurred, and whether the city was negligent in maintaining the wires as

it did, were questions for the jury. (*Stedwell v. City of Chicago, supra.*) There was sufficient evidence of negligence to justify the court in submitting the case to the jury, and the motion to direct a verdict was properly overruled.''

Many physical conditions on a highway might exist which would be attractive and dangerous to children, and a ground for liability in case of injury, which would be looked upon as entirely innocuous if on private property. If, for example, the City, or anyone, created in a public highway a pond or well of water, deep enough to drown a child who could not swim, there would be no reasonable question or claim that it was not dangerous and a menace to life. The fact, therefore, that this sand pile in which the boy was suffocated was in a public highway becomes important in determining whether or not the evidence justified submitting the case to the jury, and distinguishes the instant case from all the cases cited where the *locus in quo* was on private property.

Some contention is made for the defendants that error was committed in admitting in evidence part of a city ordinance. The part admitted is as follows: ''It shall be unlawful to occupy a street under authority of a permit, for the storage of articles not intended for immediate use in connection with the operations for which the permit was issued.'' And it is contended that error was committed in giving an instruction which recited that part of the ordinance. In our judgment, considering the pleadings and the evidence, the ordinance was not only properly pleaded, but was apt evidence, and the instruction thereon entirely proper.

It is contended further for the defendants that the trial judge erred in giving a certain instruction offered on behalf of the plaintiff, and refusing one on behalf of the defendants, which pertained to the subject of contributory negligence. There was no error in giving the one for the plaintiff. It contains a very

exact statement of the rule as to what constitutes contributory negligence on the part of a child; whereas, the one offered on behalf of Bairstow and refused, defines contributory negligence, as applied to this case, as "a failure on the part of the person injured to exercise ordinary care and caution for his own safety, which proximately contributes in any degree to bring about the damages for which suit is brought," which definition in no way suggests what is the true rule, that is, that the deceased was only required to exercise that degree of care which a child of his age and intelligence, capacity, discretion and experience would naturally and ordinarily use in the same situation and under the same circumstances. *Deming v. City of Chicago, supra.*

It is further contended that the court erred in giving for the plaintiff the following instruction:

"The defendant, the City of Chicago, was required by law to use reasonable care, to keep the public street at the place in question, in a reasonably safe condition, for persons using the streets, and who themselves were in the exercise of that degree of care for their own safety required by law."

We see no objection to that instruction. It merely states the rule as to the duty of the City concerning its streets. Critically considered, it may have been superfluous, but it certainly could do no harm.

The contention is made on behalf of the City that instructions numbered 1, 3 and 4, which were given for the plaintiff, suggested to the jury that the court believed a verdict should be rendered in favor of the plaintiff. We do not find that they are objectionable on that score, nor do we consider that they are subject to the objection that they would permit a recovery without limiting the damages to those claimed in the declaration.

For the foregoing reasons, the judgment is affirmed.

*Affirmed.*

O'CONNOR, J., concurring.

MR. JUSTICE THOMSON dissenting: I do not concur in the decision of this case as announced in the foregoing opinion. No evidence was submitted as to just how the head and shoulders of the deceased boy, and the upper part of his trunk, came to be covered with sand. It would seem to be a justifiable inference, from the testimony, that he had dug a hole or tunnel in the sand pile, west of the north and south center line and near its top, making, as his father described it, "a sort of a hole that curved up,—sloped up," and that, as he was digging this hole or tunnel, and had the upper part of his body, including his arms, in the hole he had dug, the sand above caved in and he was suffocated.

It may be assumed, as a matter of common knowledge, that a nice clean pile of sand, as this was, especially when located along the side of a public street, would prove attractive to the boys of the neighborhood. That it did so prove, in fact, is shown by the testimony of witness Anderson, the owner of the property in question, who testified that he had seen children about the sand pile digging caves several times and had chased them away from there. The question remains, Did the sand pile, in the form in which it was permitted to remain in and along Pine Grove Avenue for some days, present a dangerous situation? And further, Should the defendants, in the exercise of a reasonable degree of care, have foreseen that, if the sand pile was permitted so to remain, injury was likely to occur to children who might play about there?

In *McDermott v. Burke*, 256 Ill. 401, a child was attracted into a building under construction, by a sand pile which had been hauled in by teams and deposited near the center of the building for use in making mortar. After playing on the sand pile for a time he went to some machinery near by and was there injured. In the course of its opinion the Supreme Court said

that "the sand pile was tempting to children on account of their natural instincts, but it was not dangerous in any sense and caused no injury," and, further, that the defendant was under no obligation to keep the opening leading into the building barricaded "on account of any attraction of the sand pile, for the reason that the sand pile was not dangerous to children."

In *Ramsay v. Tuthill Bldg. Material Co.*, 295 Ill. 395, the defendant maintained an elevated switch track on its premises beneath which there were several bins for the purpose of holding sand. The bottoms of the bins were about 8 feet from the ground, and in the bottoms were chutes by which the contents of the bins could be made to run in various directions. These chutes were opened or closed by doors controlled by levers. Sand was dumped into these bins from the tracks above them and then emptied into wagons below the bins, by means of the chutes. A ladder led from the ground up to the elevated tracks. The premises were accessible from the street and children frequented them to play in the sand they found about the premises. On the day of the accident involved in that case, a boy climbed the ladder, and walked along the elevated structure to a bin nearly full of sand. The chute was open. He jumped in to see if he would slide through the opening to the ground. He did so, but was followed by such a quantity of the sand as to cover him and he was smothered to death. In the course of its opinion in that case, the court said that "it was not negligence to maintain the sand pile on the ground or the sand bins or the ladder," but whether it was negligence to have openings in the bins through which the sand could pass, which were not securely fastened, was a question of fact for the jury to consider and pass upon.

In my opinion there is a clear distinction between the situation presented in the case at bar and those in-

volved in cases relied upon by the plaintiff in support of the judgment appealed from. The case of *Rost v. The Parker Washington Co.*, 176 Ill. App. 245, involved the maintenance of a sand pile by the defendant, "as large as a small house," and 20 or 30 feet wide, one end of which was close to a river bank which was composed of piling extending 4 feet above the water. The court said that even if it were conceded that there was nothing dangerous *per se* in the sand pile and that it was not an attractive nuisance, yet "when the sand pile is placed so near to the bank of a river that a fall from the sand pile would naturally cause a child to fall into the water, it must be regarded as dangerous, and that the danger therefrom is such that it should reasonably be anticipated and guarded against by the owner of premises located adjacent to a public street."

The case of *City of South Bend v. Turner*, 156 Ind. 418, presented a situation where the defendant had permitted "large piles of sand" to be piled upon the street where a sewer was being constructed, near a manhole which led down to the sewer nearly 30 feet below. This manhole was negligently allowed to remain uncovered and open. Children were attracted to the spot for the purpose of playing in the sand piles. The plaintiff, who was a young child, while playing on one of these piles, fell down through the open manhole. Here again, we have a combination of objects which the party responsible, in the exercise of a proper degree of care, should have known would probably result in injury to those likely to be attracted there. That is not the situation presented in the case at bar.

In *Stedwell v. City of Chicago*, 297 Ill. 486, and *Deming v. City of Chicago*, 321 Ill. 341, the defendants were held liable for negligently causing the deaths of boys who came in contact with electric wires, charged with a high voltage of electricity. In the

latter case the court held that the defendant, in placing such wires, was bound to guard against accidents "by the exercise of that degree of care commensurate with the danger incident to the use of such a dangerous agency. * * * Whether the tree located in the public street was so attractive to children in their sports as to suggest the probability of such an accident as occurred, and whether the city was negligent in maintaining the wires as it did, were questions for the jury." Counsel for plaintiff urges that if we here substitute the words "pile of sand" for the words "tree" and "wires" in the language of the Supreme Court just quoted, "we have a statement very applicable to the case at bar." We may not properly indulge in any such liberty with the language of the Supreme Court to be found in the *Deming* case, unless the agency involved in the case at bar, which caused the death of plaintiff's intestate, possessed such a degree of apparent danger as to make it reasonably comparable to that involved in the *Deming* case. Such, in my opinion, is not true. There is a very great difference between an inert pile of sand and electric wires carrying 3150 volts of electricity. Because the question of whether a tree in a parkway was so attractive to children as to suggest the probability that a boy might climb into its branches, and if he did, might come into contact with wires carrying certain death to anyone who touched them and whether a city was negligent in permitting such a situation to exist, presented a question for a jury, it may not reasonably be argued that it follows that whether a sand pile lying in a parkway and partially in the roadway of a public street was so attractive to children as to suggest the probability that a boy might dig his way into it and be smothered, and whether these defendants were negligent in permitting such a sand pile to remain there, likewise presented a question for a jury. In my

opinion, two such situations present probabilities which are in no way similar. In one there may be said to be all the elements of probability while in the other they are very remote.

In the recent case of *Mindeman v. Sanitary Dist. of Chicago,* 317 Ill. 529, our Supreme Court held that "a canal, a pond, or other open body of water on private property, is not of itself an attractive nuisance, as that term is used in describing an instrumentality which will render the owner liable for injuries to a child attracted to and injured by it," citing many cases, and among them, *Barnhart v. Chicago, M. & St. P. Ry. Co.,* 89 Wash. 304. There the question presented was whether the owner of property on which a pond was formed, to which the boys of the neighborhood resorted for play, was guilty of negligence in failing to fence his property against such intrusion. The court held that there was no liability, and in the course of its opinion said: "That a pond of water is attractive to boys for the purposes of play, swimming, and fishing no one will deny. But its being an attractive agency is not sufficient to subject the owner to liability. It must be an agency such as is likely, or will probably, result in injury to those attracted to it. That many boys every year lose their lives by drowning is a matter of common knowledge. But the number of deaths in comparison to the total number of boys that visit ponds, lakes, or streams for purposes of play, swimming and fishing is comparatively small. It would be extending the doctrine too far to hold that a pond of water is an attractive nuisance, and therefore comes within the turntable cases. * * * The turntable doctrine makes the owner liable because the dangerous agency was attractive to children of tender years, and in playing about or with such agency accident or injury would probably result."

It is true that the doctrine of attractive nuisance was formulated to answer the defense that the child;

in going upon private premises, was a trespasser. But if a pile of sand may be so maintained as to amount to an attracive nuisance, on private property, it would be no less so, if maintained in the same way, though temporarily, along a public highway or street. The sand is no less attractive and dangerous, if it be such at all, if piled in the street, and it remains the private property of the one who put it there.

But I am of the opinion that, though attractive, this sand pile could not be said to be a nuisance in the sense that it was a menace to children playing upon it. If it may be said that a pond or a canal is not a menace, so as to amount to a nuisance, although children are drowned in them now and then, it could certainly not be successfully contended that a pile of sand was a menace to playing children, because such an unfortunate accident as happened in this case was at least a possibility.

It may be that this pile of sand presented a menace to passing traffic, and that it was therefore negligent for defendants to permit it to remain as it was. But that fact may not affect this case, as any such negligence had no part in the events which are involved. It is, of course, not necessary that a person guilty of a negligent act or omission, might, in the exercise of reasonable care, have foreseen the precise form of injury which has occurred, but when it does occur, it must appear, if the defendant is to be held liable, "that it was a natural and probable consequence of his negligence." *Seith v. Commonwealth Electric Co.,* 241 Ill. 252.

But in my opinion that may not reasonably be held to be the case here. A pond furnishes a condition which will cause a child to drown if he gets into it over his depth and cannot swim, but that does not make it a menace to children, for thousands of them find pleasure playing about them and do not drown and the law does not charge one who maintains a pond with

522    APPELLATE COURTS OF ILLINOIS.

Chicago, R. I. & P. R. Co. v. North American C. S. Co., 244 Ill. App. 522.

negligence if perchance a child does get into it and lose his life. So a pile of sand, in materially less measure, furnishes a condition which has at least possibilities of danger, but not such probabilities as to mean that one who permits one to exist and remain where children are, does so at his peril. Moreover, the accident involved in this case happened on the last day of November. The evidence shows that the night was cold. This boy did not go to this sand pile until after dark— 7.30 o'clock in the evening. I believe the law may not reasonably be carried to the extent of charging these defendants with negligence for failing to take such precautions as were calculated to keep children away from the sand pile, not only through the day, but into the night, especially at that season of the year.