## John Flis, Administrator of the Estate of Bruno Flis, Deceased, Appellee, v. City of Chicago, Appellant.

### Gen. No. 31,803.

1. Negligence—*attractive nuisances on private property and on public streets.* The policy of the law to require a trespassing child to make out a very clear case of attractive nuisance on private property does not apply to a child, having a right to be on a street, who may be attracted to a tar boiler placed on a street by a city.

2. Negligence—*question for jury whether tar boiler on public street was attractive nuisance.* Where a city places on a public street a tar kettle for boiling tar for street repairs, and a 5-year-old boy is killed by tar from the tilting of the kettle through his play, held the question whether the kettle was an attractive nuisance was for the jury and that their verdict for plaintiff's intestate should be sustained.

3. Negligence—*necessity of proving all the grounds alleged.* A plaintiff alleging several acts of negligence in his declaration is not required to prove all of them but only enough to make out a case.

4. Negligence—*contributory negligence of young child.* A boy five years old is incapable of such conduct as will constitute negligence.

5. Negligence—*boy as trespasser in street.* A child killed while playing on a public street by an alleged attractive nuisance, a tilting tar boiler, is not a trespasser.

6. Negligence—*sufficiency of evidence of parents' care for the safety of child.* Where a city places on a public street a tar kettle for boiling tar for street repairs near the home of a 5-year-old boy who is killed by tar from the tilting of kettle through his play, evidence that his father had closed a gate leading to the street with a hook four feet above the ground and then returned to painting his house; that the mother was engaged in housework; that the boy was playing in the

yard five minutes before the accident, and that the father had instructed the child to remain off the street and play in the yard, is sufficient to sustain a finding that the parents used ordinary care for the boy's safety prior to the accident.

7. DEATH BY WRONGFUL ACT—*evidence that death was caused by injury.* There is evidence that a boy died in consequence of injuries he received at the time a tilting tar kettle deposited boiling tar on him, where the attorney for the defendant admits the death of the boy and that the burns he received at the time of the accident caused his death, and the father testifies that the boy died on the day after the accident.

Appeal by defendant from the Superior Court of Cook county; the Hon. L. P. HARRISS, Judge, presiding. Heard in the second division of this court for the first district at the March term, 1927.   Affirmed. Opinion filed December 27, 1927.

SAMUEL A. ETTELSON, Corporation Counsel, and WILLIAM D. SALTIEL, City Attorney, for appellant; CHARLES M. McDONNELL, Assistant City Attorney, and CORA B. HIRTZEL, Assistant Corporation Counsel, of counsel.

JOHN H. KAY, for appellee.

MR. JUSTICE SCANLAN delivered the opinion of the court.

John Flis, administrator of the estate of Bruno Flis, deceased, appellee, hereinafter called the plaintiff, sued the City of Chicago, a municipal corporation, appellant, hereinafter called the defendant, in an action on the case to recover damages for the benefit of the next of kin for the alleged wrongful death of plaintiff's intestate. The case was tried before the court, with a jury, and a verdict was returned finding the defendant guilty and assessing the plaintiff's damages at $5,500. Judgment was entered on the verdict and this appeal followed. The record discloses that the City of Chicago had been repairing spots in the street pavements in the vicinity of Forty-first street and Albany avenue and that on August 9, 1924, at the

intersection of these streets the repair gang had a portable iron tar kettle—or boiler, as some witnesses call it—about four or five feet high and three feet in diameter. The kettle rested on two wheels that were about two and one-half to three feet high. "It had a bar to hitch up to when it was drawn." It had a little smokestack. There was a handle attached to the kettle that extended outward, and to keep the boiler in an upright position and stationary a stick or iron bar was placed underneath the handle. This stick or bar was the only means by which the kettle was held in an upright and stationary position. Without the support of the stick or bar it would tip over. There were no guards or barriers around it and there was no one watching the kettle at the time of the accident. The foreman of the gang testified that "at the time of the accident no one was at the kettle—I will admit that." The defendant contends that there were barricades at the intersection in question to stop traffic on the street. According to the plaintiff's evidence there were no barricades at the street intersection at the time of the accident and several of the defendant's witnesses testified that they were unable to say positively whether the barricades were there at that time. It is admitted that there were no barricades to prevent persons from leaving the sidewalks and going upon the street. At the *locus in quo* many children of immature age played upon the streets. Witnesses for the defense admitted that young children were attracted to the kettle and played around it; that they would climb up on the wheels and put sticks into the tar; that on several occasions children were chased away from the kettle but that when the tar was cold the men in charge of the kettle did not object to children playing around it. Witnesses for the plaintiff testified that boys touched the handle of the kettle once in a while; that they would "stick around the kettle or watch the men work"; that children would pick up lumps of tar and

throw them into the kettle; that children would chop up tar, break it into pieces and throw it into the kettle. At the time of the accident there was a fire at the bottom of the kettle, smoke was coming out of the smokestack, and 50 gallons of tar were being boiled in the kettle. The plaintiff's intestate, Bruno Flis, a child of five years of age, with his younger brother left the sidewalk and went to the kettle. Bruno took hold of the handle and began to swing on it. Then he went back to the sidewalk and stayed there a few seconds. Then he walked back to the kettle, took hold of the handle and began to swing on it again. The stick supporting the handle fell down or was kicked down by the boy and he fell to the pavement. The kettle tipped over and the tar poured over him. His younger brother tried to pull him out of the tar and a neighbor ran out of a store and picked up Bruno and took him to the sidewalk. He died the next day. Two witnesses for the plaintiff testified that the foreman of the gang, about the time of the accident, was asleep on the steps of a house located a few doors from the place of the accident. The foreman denied that he was asleep on the steps at the time of the accident, but he admitted that he might have been sitting there the day before the accident.

The defendant contends that the verdict of the jury cannot be sustained on the theory of an attractive nuisance, and cites in support of his contention *Szymczak v. Schillinger Bros. Co.,* 197 Ill. App. 585, and *Newman v. Barber Asphalt Paving Co.,* 190 Ill. App. 636. The number of so-called attractive nuisance cases has increased greatly in Illinois during the past ten years, but in nearly every case where the question has been passed upon by the upper courts the *locus in quo* was privately owned property and the child injured or killed a trespasser. In the present case the accident happened in a public street and the deceased was not a trespasser at the time he was injured.

(*Deming v. City of Chicago,* 321 Ill. 341; *Stedwell v. City of Chicago,* 297 Ill. 486.) In the recent case of *Holmberg v. City of Chicago,* 244 Ill. App. 505, 514, the court said: "Many physical conditions on a highway might exist which would be attractive and dangerous to children, and a ground for liability in case of injury, which would be looked upon as entirely innocuous if on private property." In a trespass case involving an alleged attractive nuisance, the plaintiff seeks to excuse the trespass on the ground that there was an attractive nuisance on the premises of the defendant and it is the policy of the law to require the plaintiff in such a suit to make out a very clear case of attractive nuisance. But a distinction must be drawn between such cases and the instant one where children playing upon the public street, as they lawfully might, would be more apt to be attracted by the tar kettle placed on the street than if it had been located upon private property.

In *Szymczak v. Schillinger Bros. Co., supra,* plaintiff's intestate with other children used the lot of the defendant as a playground and on the day of the accident, while the children were playing on the premises, they noticed a barrel containing tar that was being allowed to cool, and the court held that as the barrel of tar was not the means of attracting the children upon the premises the doctrine of attractive nuisance could not be applied to the case. It is true that in the opinion it is said that the court was not willing to extend the doctrine of attractive nuisance to a barrel of tar, but this language, if it is not *obiter,* at least must be interpreted in the light of the facts of that case. In *Newman v. Barber Asphalt Paving Co., supra,* the plaintiff's intestate was injured by reason of a team suddenly starting forward, and the court held that under the facts of the case the driver of the team was not guilty of negligence and the judgment of the lower court was reversed with a finding that the

defendant was not guilty of negligence. The team in question was hauling tar and the court in its decision stated that ''no case has been cited, and a careful search has disclosed none, wherein the doctrine of 'attractive nuisance' has been extended to a team and wagon or other like vehicle standing or moving upon the street.'' This case is the only one cited in *Szymczak v. Schillinger Bros. Co., supra,* in support of the statement of the court in that case that the court was not willing to extend the doctrine of attractive nuisance to a barrel of tar.

Unless the facts in the present case are such that all reasonable minds would draw therefrom no other inference than that the tar kettle and the manner in which it was used did not constitute an attractive nuisance, the question became one of fact for the jury to determine. (*City of Pekin v. McMahon,* 154 Ill. 141, 147–152; *True & True Co. v. Woda,* 201 Ill. 315, 318; *Stollery v. Cicero & P. St. Ry. Co.,* 243 Ill. 290, 292; *Stedwell v. City of Chicago, supra; Anderson v. Karstens,* 218 Ill. App. 285, 292; *Holmberg v. City of Chicago, supra.*) The jury found that the kettle, under the circumstances of this case, was an attractive nuisance, and we are satisfied that we would not be justified in overriding that verdict. In our judgment, common experience and common sense justify the finding of the jury. In *Holmberg v. City of Chicago, supra* (certiorari denied by the Supreme Court), the plaintiff's intestate, an 11-year-old boy, was smothered in a sand pile into which he had dug and which the city had allowed the defendant contractor to pile some eight feet high in a public street. The court held that the question as to whether the sand pile constituted an attractive nuisance was a question of fact for the jury to determine and that the court was not justified in setting aside the finding of the jury that it was an attractive nuisance. In our opinion, the facts before us make out a stronger case of an attractive nuisance.

The defendant apparently assumes that if the theory of attractive nuisance is not sustained by the evidence the plaintiff's case falls. This contention is not warranted by the pleadings or the evidence in the case. The declaration consists of three counts. The sufficiency of the declaration or any of its counts is not challenged. It is true that in each of the counts the plaintiff charges that the kettle or boiler was attractive to children of tender age, but each count contains other charges of negligence, viz, that there was no proper brace or device used to prevent the kettle from tilting over or upsetting; that there were no guards, barricades or other precautions for safety surrounding the boiler; that the defendant neglected to have a person watching the kettle to prevent children of immature age from approaching and coming in contact with the same; that the top of the boiler was left open, with no cover or lid over it, so that when the boiler was caused to be tilted its contents would quickly and freely flow and spill out. The plaintiff had the right to allege in his declaration as many grounds of recovery as he saw proper, but it was not necessary that he prove all of these. If he proved enough of the acts of negligence charged to make out a case it was sufficient. (*Weber Wagon Co. v. Kehl*, 139 Ill. 644, 658; *Devine v. Delano*, 272 Ill. 166; *Wood v. Illinois Cent. R. Co.*, 185 Ill. App. 180, 184; *Reivitz v. Chicago Rapid Transit Co.*, 327 Ill. 207, 209.) Plaintiff's intestate was only five years of age at the time of the accident and was therefore incapable of such conduct as would constitute contributory negligence (*Maskaliunas v. Chicago & W. I. R. Co.*, 318 Ill. 142, 149), and he was not a trespasser (*Deming v. City of Chicago, supra; Stedwell v. City of Chicago, supra*), and in our judgment, even if it be held that the kettle did not constitute an attractive nuisance, nevertheless, under the pleadings and the evidence in the case, the plaintiff made out a clear case of negligence against the defendant. The attractive

Flis v. City of Chicago, 247 Ill. App. 128.

nuisance charge, if proved, would be but a circumstance bearing upon the question of the alleged negligence of the defendant.

The defendant contends that the court permitted the counsel for the plaintiff to put leading questions to his witnesses. The counsel calls our attention to three alleged instances in support of his contention and an examination of the same shows that the present contention is without the slightest merit.

The defendant next contends that the evidence does not show that the next of kin of the plaintiff's intestate were exercising ordinary care for his safety prior to the accident. The evidence shows that repair work was being done in front of the home of the intestate and that the kettle was but a few lots from said home; that there were five young children in the family and that just prior to the accident the father was painting the upper rear part of the house from a porch and the children were standing on the porch watching the father, and he being fearful that the children might fall off the porch made them go down to the back yard. There was a fence around the yard and a gate opening into the alley and one opening into the front. These gates had hooks that were about four feet from the ground. The father closed the gates and hooked them and then, a few minutes before the accident, went upstairs and continued with his painting. The mother was in the house at the time engaged about her work. The evidence shows that Bruno was in the back yard five minutes before the accident happened playing on a swing with an older brother. It further appears that the father had instructed the small children to remain off the street and to play in the back yard. The jury have found that the parents of Bruno were in the exercise of ordinary care for his safety prior to the accident, and we see no good reason for disturbing this finding.

The defendant contends that there is no evidence that Bruno died in consequence of the injuries he received at the time of the accident. There is no merit in this contention, and we are somewhat surprised that counsel should see fit to make it. The record, not the abstract, shows that counsel for the city at the time that the plaintiff called Dr. Reddick as a witness, stopped the examination of the witness by admitting the death of the boy and that the burns he received at the time of the accident caused his death. The father testified that Bruno died August 10, 1924.

The defendant next contends that the damages awarded, $5,500, are excessive. We have carefully considered this contention and we are of the opinion that we would not be justified in disturbing the amount fixed by the jury.

The judgment of the superior court of Cook county is affirmed.

*Affirmed.*

BARNES, P. J., and GRIDLEY, J., concur.